INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 320, v. CITY OF MINNEAPOLIS AND ANOTHER.

225 N. W. 2d 254.

January 10, 1975—No. 44791.

*Peterson, Bell & Converse* and *Roger A. Jensen,* for appellant.
*Walter J. Duffy, Jr.,* City Attorney, and *Robert J. Alfton,* Assistant City Attorney, for respondents.

Heard before Rogosheske, Peterson, MacLaughlin, Scott, and Knutson, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

The issues in this case are (a) whether the Public Employment Labor Relations Act (PELRA) of 1971, Minn. St. 179.61 to 179.77, requires public employers to meet and negotiate with the exclusive bargaining representatives of their employees concerning written reprimands and suspensions of their employees, and (b) if so, whether the charter of the city of Minneapolis limits the power of that city to conduct such negotiations.

The district court discharged an alternative writ of mandamus

by which plaintiff union sought to compel defendant city of Minneapolis to negotiate concerning suspensions of less than 90 days and oral or written reprimands. We affirm in part and reverse in part.

The Minneapolis City Charter, c. 3, § 25, provides that the appointment, employment, suspension, or discharge of any employee shall be governed by the charter's chapter on civil service. Chapter 19, dealing with civil service, provides that no employee after 6 months' continuous employment may be suspended without a hearing. However, the same chapter of the Minneapolis charter provides that "[n]othing in this Chapter shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding ninety days, for purposes of discipline." Minneapolis City Charter, c. 19, § 11. Minneapolis Civil Service Commission Rules 10.01 and 10.03 also provide that employees may be suspended for 90 days or less for disciplinary purposes without a hearing.

In 1973, the legislature enacted a local law, L. 1973, c. 523, which provided that, notwithstanding any charter provision to the contrary, no employee in the classified service of the city of Minneapolis may be suspended for disciplinary purposes for a period in excess of 30 days except for cause and with a right of appeal to the Minneapolis Civil Service Commission. That law became effective after this action was commenced but prior to the district court's decision. Because of this local law, the district court treated plaintiff's alternative writ of mandamus as if it applied to suspensions of 30 days or less, and the parties have accepted the 30-day period as applicable to the issues in this case. Further, the demand that oral reprimands be subject to negotiation has been dropped by plaintiff on appeal.

1. The first issue then is whether PELRA requires public employers[1] to meet and negotiate with their employees concern-

---

[1] The term "public employers" is defined in Minn. St. 179.63, subd. 4, as "the state of Minnesota and its political subdivisions and any agency or instrumentality of either * * *."

ing written reprimands and suspensions of 30 days or less. The Public Employment Labor Relations Act of 1971 governs the relationship between public employers and their employees. The significance of the act as it relates to this appeal is that it created a duty on the part of public employers to meet and negotiate with representatives of public employees regarding certain matters. In this case, plaintiff, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 320, is the exclusive bargaining representative, as defined by § 179.63, subd. 6, for all truck drivers and equipment dispatchers of the city of Minneapolis who work more than 14 hours per week and more than 100 work days per year, and has been certified as exclusive bargaining representative pursuant to § 179.67. Defendant, city of Minneapolis, is a public employer within the meaning of § 179.63, subd. 4, and has designated a collective bargaining negotiating team which has authority to bargain collectively with the union concerning terms and conditions of employment of those employees represented by the union. Representatives of the union and the city have met to bargain collectively, and the union has demanded that the parties bargain concerning written reprimands and suspensions of 30 days or less. The city has refused to negotiate regarding these matters, which will be called disciplinary matters in this opinion, and this action was brought by the union to require the city to negotiate.

Section 179.66, subd. 2, provides:

"*A public employer has an obligation to meet and negotiate* in good faith with the exclusive representative of the public employees in an appropriate unit *regarding* grievance procedures and *the terms and conditions of employment,* but such obligation does not compel the public employer or its representative to agree to a proposal or require the making of a concession." (Italics supplied.)

However, § 179.66, subd. 1, limits the duty to meet and negotiate:

*"A public employer is not required to meet and negotiate on matters of inherent managerial policy,* which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel." (Italics supplied.)

Section 179.63, subd. 18, defines "terms and conditions of employment," as used in § 179.66, subd. 2:

"The term 'terms and conditions of employment' means the hours of employment, the compensation therefor including fringe benefits and the employer's personnel policies affecting the working conditions of the employees. * * *"

The union argues that disciplinary matters are clearly "terms and conditions of employment," as used in § 179.66, subd. 2, because they are "personnel policies affecting the working conditions of the employees." Under this rationale, the union claims the right to demand that the city negotiate. The city claims that disciplinary matters are not terms and conditions of employment and that, even if they were, the city should not be compelled to negotiate these matters because they are encompassed within § 179.66, subd. 1, which does not require negotiation as to "matters of inherent managerial policy," which include the "selection and direction and number of personnel."

No Minnesota cases have interpreted the meaning of either "terms and conditions of employment" or "inherent managerial policy," as used in PELRA. The phrase "terms and conditions of employment" appears to have been borrowed from the National Labor Relations Act (NLRA), 29 USCA, §§ 151 to 168. 29 USCA, § 158(a)(5), makes it an unfair labor practice for the employer to refuse to bargain collectively, and § 158(d) defines the duty to bargain collectively as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith

with respect to wages, hours, and other terms and conditions of employment * * *."

Both parties have cited in support of their respective arguments certain Federal court decisions construing the phrase "terms and conditions of employment," as used in the NLRA. See, N.L.R.B. v. American Nat. Ins. Co. 343 U. S. 395, 72 S. Ct. 824, 96 L. ed. 1027 (1952); Fibreboard Corp. v. N.L.R.B. 379 U. S. 203, 85 S. Ct. 398, 13 L. ed. 2d 233 (1964) ; Internatl. Woodworkers, Local 3-10 v. N.L.R.B. 458 F. 2d 852 (D. C. Cir. 1972); N.L.R.B. v. Mylan-Sparta Co. Inc. 166 F. 2d 485 (6 Cir. 1948). While we find these decisions instructive, they are not controlling because the NLRA contains no definition of the phrase "terms and conditions of employment," while the PELRA does contain such a definition. In any event, it is clear from decisions such as Fibreboard Corp. v. N.L.R.B. *supra,* that the United States Supreme Court has given broad definition to the phrase "terms and conditions of employment" in interpreting the National Labor Relations Act.

A major purpose of PELRA is to further the resolution of labor disputes through negotiation. Because of the severe restrictions on strikes contained in the act,[2] we believe that the legislature intended the scope of the mandatory bargaining area to be broadly construed so that the purpose of resolving labor disputes through negotiation could best be served. In our judgment, disciplinary matters of the type involved in this case were intended by the legislature to be a subject of mandatory negotiation under PELRA, and we so hold. Surely, whether an employee

---

[2] The PELRA, as originally enacted in 1971, provided essentially that any public employee who engaged in a strike should have his employment terminated. § 179.64, subd. 2. The 1973 legislature amended the PELRA to, in effect, permit strikes in only two situations: (1) Where the public employer refuses to comply with the valid decision of a binding arbitration panel or arbitrator, and (2) where a public employer refuses to request binding arbitration when requested by the exclusive bargaining representative. L. 1973, c. 635, § 8.

may be suspended for a period up to 30 days without pay and without an opportunity to be heard, and whether a written reprimand may be inserted into his record with no opportunity to contest its contents, are matters which affect "the working conditions of the employees," and thus are within the definition of the phrase "terms and conditions of employment" found in § 179.63, subd. 18. A suspension from employment without pay speaks for itself as a serious interruption of an employee's working conditions, while a written reprimand in an employee's record may have serious repercussions on his future progress as a public employee, which certainly must be considered to affect the conditions of his employment.

Nor are we persuaded that these disciplinary matters fall within the intent of § 179.66, subd. 1, which excepts from mandatory negotiation "matters of inherent managerial policy," including "selection and direction * * * of personnel." While we do not attempt to define the scope of that exception, we do hold that suspensions of 30 days or less without pay and without a hearing and written reprimands are not within inherent managerial policy, as intended by the legislature in § 179.66, subd. 1, and that they are terms and conditions of employment upon which public employers must meet and negotiate if appropriate demand is made.

2. Even though we hold in this opinion that disciplinary matters are terms and conditions of employment and thereby generally subject to negotiation under PELRA, we must decide whether the charter of the city of Minneapolis limits the power of that city to conduct negotiations regarding such matters.

As stated above, the Minneapolis charter and civil service rules provide that an employee may be suspended for a period up to 90 days without a hearing. The 90-day period has been changed to 30 days because of the local law enacted by the legislature in 1973.

The resolution of whether the charter limits the power to negotiate on this subject was made more difficult by a 1973 amend-

ment to § 179.66, subd. 5. Prior to that amendment, that section read:

*"Any provision of any contract* required by section 179.70, which of itself or in its implementation would be in violation of or *in conflict with any* statute of the state of Minnesota or rule or regulation promulgated thereunder or *provision of a municipal home rule charter* or ordinance or resolution adopted pursuant thereto, or rule of any state board or agency governing licensure or registration of an employee, *shall be void and of no effect."* (Italics supplied.)

Prior to the 1973 amendment, it seems clear that negotiations by the city of Minneapolis on the subject of less than 30-day suspensions would have been of little value because any change from the charter provision would have been void and of no effect. However, in 1973, the legislature amended § 179.66, subd. 5, so that it now provides:

"Any provision of any contract required by section 179.70, which of itself or in its implementation would be in violation of or in conflict with any statute of the state of Minnesota or rule or regulation promulgated thereunder or provision of a municipal home rule charter or ordinance or resolution adopted pursuant thereto, or rule of any state board or agency governing licensure or registration of an employee, provided such rule, regulation, home rule charter, ordinance, or resolution is not in conflict with sections 179.61 to 179.66 and shall be returned to the arbitrator for an amendment to make the provision consistent with the statute, rule, regulation, charter, ordinance or resolution." L. 1973, c. 635, § 16.

Obviously, the statute, as amended, is unclear and difficult to understand. It appears that some words may have been inadvertently omitted. Further, the words "shall be void and of no effect" have been deleted, whether intentionally or not. Under these circumstances, and with a lack of any clear indication as to what was intended, we must conclude, as did the district court,

that in instances where a conflict arises between a provision in a contract required by § 179.70 and a provision of a home rule charter the legislature intended to give priority to the charter provision.

As support for this conclusion, we note that the legislature made no change in that part of § 179.72, subd. 7, which provides that "no decision of the [arbitration] panel which violates any provision of the laws of Minnesota or rules or regulations promulgated thereunder or municipal charters or ordinances or resolutions enacted pursuant thereto, or which causes a penalty to be incurred thereunder, shall have any force or effect."

We are also guided by § 645.16, which provides in part:

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

\* \* \* \* \*

(5) The former law, if any, including other laws upon the same or similar subjects."

While the statute is unclear, we have concluded, and now hold, that it was the intent of the legislature that a provision of a contract entered into pursuant to PELRA, which of itself or in its implementation violates or is in conflict with the public employers' home rule charter, is void and of no effect. Therefore, unless the Minneapolis charter is changed, the provisions contained therein which allow suspension for disciplinary purposes for a period not exceeding 30 days are controlling between the parties on this issue, and any contract provision which might result from negotiations on this subject would doubtless be contrary to the charter and therefore of no effect. Hence, negotiations on this subject would be futile. On the other hand, the subject of written reprimands is not dealt with in the charter, and that question is open to negotiation.

This matter is remanded to the district court with instructions that it issue a writ of mandamus ordering the city to meet and

negotiate with the union concerning written reprimands of the city's employees.

Affirmed in part, reversed in part, and remanded with instructions.