**Shelley JERVISS, Respondent,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 294, Appellant.**

**No. 49096.**

Supreme Court of Minnesota.

Nov. 17, 1978.

Peterson, Popovich, Knutson & Flynn, and Patricia Maloney, St. Paul, for appellant.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Edward M. Laine, St. Paul, for respondent.

Heard before SHERAN, C. J., and KELLY, and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal by defendant Independent School District No. 294 from granting of partial summary judgment to plaintiff Jerviss by Houston County District Court on March 30, 1978, and from judgment entered pursuant to that order on March 31, 1978. We affirm.

The legal issues raised on this appeal are:

1. Is a continuing contract teacher who is placed on unrequested leave of absence in accordance with a plan negotiated by a school district and the teachers' exclusive bargaining representative pursuant to Minn.St. 125.12, subd. 6a, entitled to notice and a hearing as provided in Minn.St. 125.-12, subd. 4, even though the plan does not expressly provide for such notice and hearing?

2. Does a teacher have a right to contest his seniority placement at an unrequested leave of absence hearing if the master agreement provides a grievance procedure?

In 1974, the Minnesota Legislature amended Minn.St. 125.12 by deleting subdivision 6(e) and adding two new subdivisions, 6a and 6b (hereinafter subdivision 6a and subdivision 6b). L.1974, c. 458. Subdivision 6a expressly authorizes a school board and the exclusive bargaining representative of the teachers to negotiate a plan for placing teachers on unrequested leave of absence when such leave "may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts." If the parties fail to negotiate such a plan by the beginning date of a new master contract, subdivision 6b is to apply.

Pursuant to subdivision 6a, defendant and the Houston Education Association, exclusive bargaining representative for the teachers employed by defendant, negotiated a plan for placing teachers on unrequested leave of absence. That plan was included in the 1975–1977 Master Agreement as "Article XVI: Layoff and Recall."[1] The plan did not provide for notice or a hearing.

---

1. The plan provided as follows: "A. No later than April 1 of each school year the Board of Education shall determine the number of teachers (bargaining unit employees) necessary to

Plaintiff, an elementary teacher, certified by license from the Minnesota Department of Education, had been continuously employed by defendant from the 1973–1974 school year until the 1976–1977 school year and had the status of a continuing contract teacher as defined in Minn.St. 125.12.

In February 1977, defendant passed a resolution placing plaintiff on unrequested leave of absence in accordance with the negotiated plan. The grounds for this action were that the elementary teaching staff had to be reduced by one teacher because of the previous discontinuance of a split room and the return of another teacher who had been on maternity leave. Plaintiff was stated to be the elementary teacher with the least seniority. Plaintiff was informed of this action by letter on February 15, 1977; she was not informed that she had a right to a hearing. On March 22, 1977, defendant passed another resolution further reducing the teaching staff because of "limited funds."

Plaintiff did not consent to being placed on unrequested leave of absence for the 1977–1978 school year. She commenced this lawsuit, an action for declaratory and injunctive relief pursuant to the Uniform Declaratory Judgment Act, Minn.St. c. 555, on August 25, 1977. She sought reinstatement and back wages, claiming that her continuing contract rights under Minn.St. 125.12, subd. 4, had been violated because she was not given notice of a "proposed termination" but of termination itself and was not told that she could request a hearing before the school board. Defendant's answer alleged as an affirmative defense that it had placed plaintiff on unrequested leave of absence in accordance with the negotiated plan.[2]

On February 10, 1978, plaintiff filed a notice and motion for summary judgment; defendant filed a notice and cross-motion for summary judgment on February 24, 1978. On March 30, 1978, the Houston County District Court granted partial summary judgment for plaintiff, finding that although defendant acted in accordance with the negotiated plan, plaintiff was entitled to notice and a hearing as provided in Minn.St. 125.12, subd. 4.

The present case is an appeal from that summary judgment for the plaintiff. There is no question of the appropriateness of the granting of summary judgment as no material fact was in dispute. The issue is whether the trial court correctly interpreted the law applicable to the case.

The statutory language at issue is found in Minn.St.1976, § 125.12, subds. 4, 6a, and 6b. Those subdivisions provide, in relevant part:[3]

---

staff the educational program for the coming school year.

"B. If the number of teachers necessary to staff the education program for the coming school year is less than the number of teachers employed as of April 1, the District shall fill these positions with the teachers who have the necessary certification possessing the most seniority first. The District will make every effort to assign teachers to their existing positions.

"C. Teachers who are in excess of the number of teachers necessary to staff the educational program for the coming year shall be laid off without salary pay or fringe benefits in inverse order of seniority (least seniority first).
* * *

    *     *     *     *     *     *

"E. Teachers who are laid off shall be placed in a job availability for a period not to exceed two years. If any opening should occur for which a teacher in a job availability pool is certified, the teacher shall be offered reemployment based on seniority in the inverse order of being placed in the job availability pool. Failure to reply in writing within thirty (30) days shall constitute a rejection of the job offer.

"F. This article does not apply to probationary or part-time teachers as defined by law."

2. Plaintiff filed an amended complaint on November 30, 1977, which, in addition to the relief originally sought, requested damages. Defendant subsequently filed an amended answer.

3. Subdivisions 6a and 6b were enacted in 1974, replacing Minn.St. 125.12, subd. 6(e). Subdivision 6(e) had, prior to 1974, provided: "A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

    *     *     *     *     *     *

"(e) Discontinuance of position, lack of pupils, or merger of classes caused by consolidation of districts or otherwise, provided that in the event of a consolidation of school districts, continuing-contract teachers on the staffs of

"Subd. 4. Termination of contract after probationary period. A teacher who has completed his probationary period in any school district, and who has not been discharged or advised of a refusal to renew his contract pursuant to subdivision 3, shall have a continuing contract with such district. Thereafter, the teacher's contract shall remain in full force and effect, except as modified by mutual consent of the board and the teacher, until terminated by a majority roll call vote of the full membership of the board, upon one of the grounds specified in subdivisions 6 or 6a or 6b, * * *. Before a teacher's contract is terminated by the board, the board shall notify the teacher in writing and state its ground for the proposed termination in reasonable detail together with a statement that the teacher may make a written request for a hearing before the board within 14 days after receipt of such notification. Within 14 days after receipt of this notification the teacher may make a written request for a hearing before the board and it shall be granted before final action is taken. If no hearing is requested within such period, it shall be deemed acquiescence by the teacher to the board's action. Such termination shall take effect at the close of the school year in which the contract is terminated in the manner aforesaid. Such contract may be terminated at any time by mutual consent of the board and the teacher and this section shall not affect the powers of a board to suspend, discharge, or demote a teacher under and pursuant to other provisions of law.

\* \* \* \* \* \*

"Subd. 6a. Negotiated unrequested leave of absence. The school board and the exclusive bargaining representative of the teachers may negotiate a plan providing for unrequested leave of absence without pay or fringe benefits for as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts. Failing to successfully negotiate such a plan by the beginning date of a new master contract, the provisions of subdivision 6b shall apply. The provisions of section 179.72 shall not apply for the purposes of this subdivision.

"Subd. 6b. Unrequested leave of absence. The school board may place on unrequested leave of absence, without pay or fringe benefits, as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts. The unrequested leave shall be effective at the close of the school year. In placing teachers on unrequested leave, the board shall be governed by the following provisions:

"(a) The board may place probationary teachers on unrequested leave first in the inverse order of their employment. No teacher who has acquired continuing contract rights shall be placed on unrequested leave of absence while probationary teachers are retained in positions for which the teacher who has acquired continuing contract rights is certified;

"(b) Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are certified in the inverse order in which they were employed by the school district. In the case of merger of classes caused by consolidation of districts or in the case of equal seniority, the order in which teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are certified shall be negotiable;

"(c) Notwithstanding clauses (a) and (b), if either the placing of a probationary

participating districts shall be retained on the staff of the consolidated district in positions for which they are qualified under state law and state board regulations to the extent that such positions exist."

Minn.St. 125.12 subds. 4, 6a, and 6b, were amended during the 1977 and 1978 legislative sessions. Those amendments, however, made no changes having substantive bearing on the issue in this case.

teacher on unrequested leave before a teacher who has acquired continuing rights or the placing of a teacher who has acquired continuing contract rights on unrequested leave before another teacher who has acquired continuing contract rights but who has greater seniority would place the district in violation of its affirmative action program, the district may retain the probationary teacher or the teacher with less seniority;

"(d) Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are certified. Reinstatement shall be in the inverse order of placement on leave of absence. The order of reinstatement of teachers who have equal seniority and who are placed on unrequested leave in the same school year shall be negotiable;

"(e) Teachers, other than probationary teachers, terminated under Minnesota Statutes 1971, Section 125.12, Subdivision 6, Clause (e), in the 1973–74 school year shall be reinstated to the positions from which they have been terminated or, if not available, to other available positions in the school district in fields in which they are certified. Reinstatement shall be in the order of seniority. The order of reinstatement of continuing contract teachers who have equal seniority and who are terminated under Minnesota Statutes 1971, Section 125.12, Subdivision 6, Clause (e) in the 1973–74 school year shall be negotiable. These teachers shall also be subject to clauses (f), (g), (h), (i) and (k) of this subdivision.

"(f) No appointment of a new teacher shall be made while there is available, on unrequested leave, a teacher who is properly certified to fill such vacancy, unless the teacher fails to advise the school board within 30 days of the date of notification that a position is available to him, that he may return to employment and that he will assume the duties of the position to which appointed on a future date determined by the board;

"(g) A teacher placed on unrequested leave of absence may engage in teaching or any other occupation during the period of this leave;

"(h) The unrequested leave of absence shall not impair the continuing contract rights of a teacher or result in a loss of credit for previous years of service;

"(i) The unrequested leave of absence of a teacher who is not reinstated shall continue for a period of two years after which the right to reinstatement shall terminate;

"(j) The same provisions applicable to terminations of probationary or continuing contracts in subdivisions 3 and 4 shall apply to placement on unrequested leave of absence;

"(k) Nothing in this subdivision shall be construed to impair the rights of teachers placed on unrequested leave of absence to receive unemployment compensation if otherwise eligible."

1. The differing interpretations of the relevant statutory language result from differences in focus and definition. Defendant, for example, emphasizes the sentence in subdivision 6a providing that if the school board and the exclusive bargaining representative of the teachers fail to negotiate a plan providing for placement of teachers on unrequested leave of absence, the provisions of subdivision 6b shall apply. The positive import of this statement is that, absent a negotiated plan, the school board may still place teachers on unrequested leave of absence, but in so doing it must abide by certain rules that safeguard the rights of the teachers. The negative import, which is emphasized by defendant, is that none of the provisions of subdivision 6b apply when there is a negotiated plan. Defendant relies for its interpretation on a statement by this court, in a case involving a challenge to placement on a seniority list compiled for purposes of implementing a plan negotiated pursuant to subdivision 6a, that since the school district and the bargaining representative had negotiated such a plan, subdivision 6b was inapplicable to the law suit. *Ellerbrock v. Board of Educa-*

*tion, Special School District No. 6,* 269 N.W.2d 858, 860 n.3 (Minn.1978).

Having thus established that the provisions of subdivision 6b do not apply to a negotiated plan, the school district refers to provision (j) of subdivision 6b, which provides that the "same provisions applicable to terminations of probationary or continuing contracts in subdivisions 3 and 4 shall apply to placement on unrequested leave of absence," and argues that the requirement of that provision does not apply to negotiated plans and that, therefore, unless the negotiated plan itself provides for notice and a hearing, a teacher placed on unrequested leave of absence in accordance with that plan is not entitled to such a procedure.

Plaintiff relies on the language of subdivision 4 providing that a teacher under a continuing contract can only be "terminated by a majority roll call vote of the full membership of the board, upon one of the grounds specified in subdivisions 6 or *6a* or 6b" (italics supplied) and that before a teacher's contract is terminated, the board must notify the teacher in writing, stating its ground for the proposed termination and informing the teacher that he has the right to request a hearing. Because subdivision 4 specifically includes terminations upon the grounds specified in subdivision 6a, plaintiff contends, the requirement of notice and a hearing applies to such terminations, whether or not the negotiated plan itself provides for such a procedure.

Defendant argues that if subdivision 4 applies automatically to subdivisions 6a and 6b, then provision (j) of subdivision 6b is unnecessary and superfluous. In addition, it argues that placement on unrequested leave of absence is not a "termination" and therefore subdivision 4 does not apply.

Although provision (j) is arguably superfluous, the legislature may have intended merely to emphasize that placement on unrequested leave of absence requires the same procedural protections as the more usual type of termination. Placement on

unrequested leave of absence is essentially a special form of termination, designed both to give the school district some flexibility in dealing with the problems of declining enrollment and to protect the rights of teachers. It is a termination with a 2-year right of reinstatement should the circumstances requiring the termination change. If the teacher is not reinstated within the 2 years, his termination is permanent. Under the previous law,[4] when a teacher could be permanently terminated because of discontinuance of position, lack of pupils, or merger of classes, the teacher clearly had a right to notice and a hearing under subdivision 4. It is not clear that the legislature intended to take away that right, even where the school district and the bargaining representative negotiate a plan for placing teachers on unrequested leave of absence.

The general rule is that where there is a conflict between the terms of a collective bargaining agreement and the terms of an applicable statute, the statute controls. *International Brotherhood of Teamsters, Local No. 320 v. City of Minneapolis,* 302 Minn. 410, 225 N.W.2d 254 (1975). Defendant argues that that rule does not apply here because the legislature explicitly authorized the negotiation of a plan providing for placement of teachers on unrequested leave of absence. Since the terms of the plan were fully negotiable, if those terms conflict with any statutory provision, the terms of the plan should control. This is a reasonable argument, especially given the strong public policy favoring negotiation of terms and conditions of employment. See, Minn.St. 179.61. Moreover, the legislature intended that the problems of declining enrollment be dealt with at a local level and that the school district and the teachers work together to find appropriate solutions for their particular problems.

The absence of specific legislative guidelines or requirements, however, can be interpreted as granting discretion as to the

4. Minn.St.1971, § 125.12, subd. 6(e) (the text of this statute appears at note 3, *supra*). Minn. St.645.16, subd. 5, provides that legislative in-

tent may be ascertained by considering the former law.

criteria and procedures to be used in deciding how to reduce the size of the teaching staff, not as authorizing the parties to take away existing statutory rights. Absent specific statutory authorization to omit procedures including notice and a hearing prior to placement on unrequested leave of absence, therefore, the parties may not adopt a plan that does not include such a procedure. Further, if the plan merely omits any reference to such a procedure, as is the case with the plan at issue here, the plan may be read to incorporate the statutory requirement of subdivision 4 by implication. See, *Minnesota Association of Public Schools v. Hanson,* 287 Minn. 415, 423, 178 N.W.2d 846, 852 (1970). The same reasoning can be applied to other provisions of subdivision 6b, for example, the right to engage in another occupation during the leave of absence or the right to receive unemployment compensation. It would be reasonable for a teacher to assume that if the plan applying to him did not explicitly prohibit him from obtaining other employment or from receiving unemployment compensation, he would be entitled to do so.[5]

■ Defendant further argues that plaintiff, through her bargaining representative, waived the rights provided by subdivision 4. While one of the school board's negotiators states that she believed that it was unnecessary to provide a hearing for teachers placed on unrequested leave of absence, there is no evidence that the teachers' negotiators so believed. Although rights guaranteed by the tenure statute may be waived, *State ex rel. Johnson v. Independent School District No. 810,* 260 Minn. 237, 246, 109 N.W.2d 596, 602 (1961),

where, as here, it is not clear either that the bargaining representative *knew* the teachers had the right to notice and a hearing or that the representative knew that by not specifically including procedures for notice and a hearing in the plan the right to such procedures would be waived, waiver will not be found.[6]

■ In interpreting the statutory language, we have considered the policies and purposes underlying the teacher tenure law, the 1974 amendments, and the Public Employees Labor Relations Act, Minn.St. 179.-61–.77. As stated in *Hudson v. Independent School District No. 77,* 258 N.W.2d 594, 597 (Minn.1977)—

"The overriding legislative purpose behind the tenure laws was undeniably the prevention of arbitrary demotions and discharges of teachers without regard to their ability. * * * Balanced against this legislative goal is the need to allow the school board enough latitude to administer effectively the operation of the public schools. See, *Keller v. Independent School Dist. No. 742,* 302 Minn. 324, 224 N.W.2d 749 (1974); *Foesch v. Independent School Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974)."

The 1974 amendments to the teacher tenure law were directed at the problem of declining enrollments. Creating the unrequested leave of absence protected the rights of teachers, especially those with seniority, while maintaining the ability of the school system to deal with the decreased need for teachers. The amendments were not intended to change the existing tenure law but to put into that law some options

5. The conclusion that neither the legislature nor the plan can take away the continuing contract teacher's rights under subdivision 4 by implication is supported by the United States Supreme Court's view that the interest in continued employment established by contractual or statutory provisions for tenure is an interest safeguarded by procedural due process. See, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Slochower v. Board of Higher Educ.,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). While there may be

no constitutional violation in the present case, accidental infringement of the due process safeguards provided by subdivision 4 should not be allowed.

6. Defendant relies upon the policy in labor law that the interest of the individual member of the bargaining unit is subordinate to the interests of the unit as a whole. Plaintiff, although attempting to protect her individual interests, is essentially seeking to establish the rights of all members of the bargaining unit. The result in this case affects all members equally.

for dealing with the declining enrollment problem.

The 1974 amendments provided two methods for dealing with the declining enrollment problem. Through subdivision 6a, the legislature encouraged a cooperative effort of the school board and the teachers, through their exclusive bargaining representative, to develop a plan suited to the particular needs of the district. Subdivision 6b provided that the school board could place teachers on unrequested leave of absence in the event no such cooperative plan was negotiated. By enacting these options, the legislature was furthering the public policy articulated in Minn.St. 179.61. It is not clear, however, that by enacting subdivision 6a the legislature intended to abrogate the rights provided to teachers under continuing contracts by subdivision 4. In fact, by specifically including terminations under subdivision 6a in subdivision 4, the legislature seemed to indicate that, even under a negotiated plan for unrequested leave of absence, the teacher has the right to notice of the proposed termination (or unrequested leave of absence) and the right to request a hearing on the grounds for that termination. If subdivision 4 does provide this right, the fact that the right to notice and a hearing is not explicitly included in the negotiated plan should not take away that right. As this court has previously indicated:

> "All contracts of tenure teachers must be construed to incorporate the provisions of the tenure statute in effect \* \* \* at the time their contracts were negotiated and signed. Many of these contracts specifically incorporate the current provisions of the tenure law. Those contracts which do not expressly incorporate the provisions of the tenure act we deem to impliedly incorporate such provisions, including all amendments to the act as they

are made." *Minnesota Association of Public Schools v. Hanson, supra,* 287 Minn. at 423, 178 N.W.2d at 852.

Thus, because of the historic significance of the teacher tenure law and the requirements of notice and a hearing prior to termination, we hold that the 1974 amendments did not eliminate those rights by implication. If notice and a hearing are to be denied a teacher, a clear legislative mandate is a preferable method of doing so.

2. We agree with the trial court that plaintiff was entitled to a hearing both to ascertain whether there was sufficient evidence to support the discontinuance of plaintiff's position and to determine whether the requisites of the plan had been properly applied on the question of plaintiff's seniority.[7]

In *Ellerbrock v. Board of Education, Special School District No. 6, supra,* this court found that the teacher should have pursued her objection to her seniority number through the grievance procedure established by the master agreement. The master agreement involved in that case, however, set out a detailed procedure for contesting placement on the seniority list. See, id, 269 N.W.2d 860–61 n.4. The master agreement in this case does not include such a detailed procedure to contest seniority, though it does include a general grievance procedure. "Grievance" is defined in the plan as—

> "[a] dispute or disagreement involving a teacher or a group of teachers and the District or representatives of the District concerning the interpretation and application of terms and conditions of employment, the right of a teacher to equitable treatment, or other matters contained in this contract \* \* \*." Master Agreement Between Independent School Dis-

---

**7.** Defendant raises on appeal the issue whether disputes regarding seniority placement or rank are governed by the grievance provisions of the master agreement. Plaintiff argues that, because defendant did not raise the issue of failure to exhaust the grievance procedure below, it cannot raise it on appeal.

It is true, as plaintiff contends, that defendant did not raise this issue below. It had no reason to raise the issue as plaintiff had not contested her seniority placement. The trial court's statement that question of seniority could be determined at the hearing was the first indication that seniority placement might be in issue.

trict No. 294 and the Houston Education Association, art. XX, § 2A. (Effective dates: July 1, 1975 through June 30, 1977.)

A teacher's placement on a seniority list fits within this definition. Although Minnesota's strong policy favoring arbitration as a means of resolving labor disputes, see, *Ellerbrock v. Board of Education, Special School District No. 6, supra,* 269 N.W.2d at 862, would seem to dictate that any dispute about plaintiff's seniority placement be resolved by arbitration, plaintiff's seniority placement was one ground for the decision to place her on unrequested leave of absence, and thus she should be allowed to challenge this placement at the termination hearing.[8] See, also, *Jordahl v. Independent School District No. 129,* 302 Minn. 286, 225 N.W.2d 224 (1974) (in a hearing under Minn.St. 125.12, subd. 6(e) (1971), the school board's basis for choosing to terminate petitioner was addressed at the termination hearing).

The grievance procedure of the master contract here provides that proceedings under the grievance procedure shall not constitute a hearing required to be held under Minn.St. 125.12. Thus, where plaintiff is entitled to a subdivision 4 hearing and she also wants to challenge her seniority placement, she will be required to pursue two separate proceedings if the seniority challenge can only be pursued through the grievance procedure. If plaintiff had been able to challenge her seniority placement prior to being given notice of termination, as was the petitioner in *Ellerbrock, supra,* requiring her to use the grievance procedure would be reasonable. Plaintiff, however, apparently was unaware of her seniority placement until she received notice of her placement on unrequested leave of absence. Thus, allowing her to contest her seniority placement at a subdivision 4 hearing is an efficient method of dealing with all of the grounds for her placement on

unrequested leave of absence at one time. Based on the facts of this case, we find that where there has been no apparent opportunity to challenge seniority placement prior to a notice of placement on unrequested leave of absence, the teacher may raise that issue at the hearing on her unrequested leave of absence.

Affirmed.

PETERSON and TODD, JJ., took no part in the consideration or decision of this case.

---

8. Defendant argues that the hearing required by subdivision 4 is intended only to establish whether the grounds for termination exist. Although the statute does not specifically mention seniority as an issue that can be raised at a termination hearing, neither does it explicitly limit the issues that can be raised. The statute can be read as allowing a teacher to raise any issue relevant to the school board's decision to terminate him.