James **ATWOOD, et al., Respondents,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 51, FOLEY, Minnesota, Appellant.**

**No. CX–83–635.**

Supreme Court of Minnesota.

Aug. 31, 1984.

---

James E. Knutson, David S. Bartel, St. Paul, for appellant.

Eric R. Miller, St. Paul, for respondents.

AMDAHL, Chief Justice.

This appeal raises procedural issues relating to Minnesota's Teacher Tenure Statute, Minn.Stat. §§ 125.01–.611 (1982). More specifically, the instant case requires us to reconcile the procedural rights accorded teachers placed on an unrequested leave of absence pursuant to a plan negoti-

ated under Minn.Stat. § 125.12, subd. 6a (1982), and our holding in *Jerviss v. Independent School District No. 294*, 273 N.W.2d 638 (Minn.1978).

In 1974, appellant, Foley School Board (hereinafter Board), and the Foley Education Association (FEA), exclusive bargaining agent for the teachers in the Foley School District, negotiated a plan for placing teachers on unrequested leave of absence under Minn.Stat. § 125.12, subd. 6a (1980). The plan provided:

> Teachers placed on such leave shall receive written notice by April 1st of the school year prior to the commencement of such leave with reasons therefore, *without the necessity for any hearing* applicable to termination, except that a hearing may be provided to show any violation of this policy.

(Emphasis added).

On March 22, 1982, the Board adopted a resolution proposing to place respondents James Atwood and Robert Helie and other teachers on unrequested leave of absence after the 1981–82 school year. The resolutions stated, in pertinent part, as follows:

> BE IT RESOLVED by the School Board of Independent School District No. 51, as follows:
>
> 1. That it is proposed that: [James Atwood and Robert Helie] faculty members of said school district, *be placed on unrequested leave of absence* without pay or fringe benefits, effective at the end of the 1981–82 school year on June 4, 1982, pursuant to M.S. 125.12, subd. 6b.
>
> 2. That written notice be sent to said teachers regarding the proposed placement on unrequested leave of absence without pay or fringe benefits as provided by law and *said notice shall include a date for hearing if requested * * *.

(Emphasis added). Respondents Atwood and Helie received, by personal service, a copy of the above resolution and written notice of the Board's action on March 24, 1982, and March 25, 1982, respectively. Respondents were informed that the rea-

sons for their placement on unrequested leave of absence were: discontinuance of position, lack of pupils, and financial limitations. In addition, respondents were informed that if they did not request a hearing within 14 days, then the Board's action would be final.

On April 1, 1982, respondents sent letters to the Board acknowledging notice and requesting a hearing under Minn.Stat. § 125.-12 (1982). A hearing was held before Larkin McClellan, an independent hearing officer, on May 17, 1982.

At the start of the hearing, respondents moved to dismiss the proceedings; respondents asserted that under the collective bargaining agreement the hearing and a final decision had to be complete by April 1. McClellan dismissed respondents' motion.

McClellan released his proposed decision on May 25, 1982. McClellan held that the Board satisfied the collective bargaining agreement deadlines and the deadlines under Minn.Stat. § 125.12 (1982). Respondents' motion to dismiss was therefore specifically denied, and McClellan advised the Board to place respondents on unrequested leave of absence. McClellan's report was adopted by the Board and was served on respondents prior to June 1, 1982.

The Benton County District Court granted certiorari to respondents to review the Board's decision. The district court construed the collective bargaining agreement to require the entire procedure, through the post-hearing decision of the Board, to be completed by April 1. Consequently, the Board's decision was reversed and respondents were ordered to be reinstated. We reverse.

■ This court reviews a school board's decision to terminate a teacher by looking at the entire record. The matter is, however, not heard *de novo* and this court may not substitute its judgment for that of the school board. *Ganyo v. Indep. School Dist. No. 832*, 311 N.W.2d 497, 500 (Minn. 1981).

A school board's decision to terminate a teacher or principal should be set aside

only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law. *Liffrig v. Independent School Dist. No. 442*, 292 N.W.2d 726, 729 (Minn.1980).

In the instant case, there is no evidence or allegation that the Board's decision to terminate respondents was fraudulent. The decision was controlled by a seniority list agreed upon by the Board and the FEA and cannot be characterized as arbitrary. Furthermore, the record evinces a good faith attempt by the Board to adhere to the dictates of the collective bargaining agreement and section 125.12; thus, the decision was not unreasonable.

McClellan found that the declining enrollment of students and a tighter budget necessitated the Board's decision to terminate respondents under the terms of Minn.Stat. 125.12, subd. 6a (1982). The Board's decision to terminate was supported by substantial evidence on the record. Consequently, we can reverse the Board's decision to terminate respondents only if we find that the terminations were not within the Board's jurisdiction or were based upon an erroneous theory of law.

■ With respect to unrequested leaves of absence, section 125.12 provides school boards with two options. First, under subdivision 6a, the board may negotiate a plan with the teachers' exclusive bargaining representative. In the absence of a subdivision 6a plan, the legislature has outlined, in subdivision 6b, the procedures to be followed for placing teachers on unrequested leaves of absence. In *Jerviss*, 273 N.W.2d 638, we commented regarding subdivision 6a plans:

> By enacting these options, the legislature was furthering the public policy articulated in Minn.St. 179.61. It is not clear, however, that by enacting subdivision 6a the legislature intended to abrogate the rights provided to teachers under continuing contracts by subdivision 4. In fact, by specifically including terminations under subdivision 6a in subdivision

4, the legislature seemed to indicate that, even under a negotiated plan for unrequested leave of absence, the teacher has the right to notice of the proposed termination (or unrequested leave of absence) and the right to request a hearing on the grounds for that termination. If subdivision 4 does provide this right, the fact that the right to notice and a hearing is not explicitly included in the negotiated plan should not take away that right.

*Jerviss*, 273 N.W.2d at 646. The clear import of *Jerviss* is that the presence of a plan negotiated under Minn.Stat. § 125.12, subd. 6a (1982), does not abrogate or eliminate any other statutory rights under section 125.12.

This case, however, does not involve a failure by the Board to comply with Minn. Stat. § 125.12 (1982). Rather, this case involves actual compliance with section 125.12 by the Board and an attempt to comply with an unclear subdivision 6a plan. Section 125.12 requires, under a subdivision 6a plan and *Jerviss*, notice, a hearing, and a final decision by the Board by June 1. *See* Minn.Stat. § 125.12, subds. 4, 10 (1982). The Board has complied with section 125.-12.

The instant plan for placing tenured teachers on unrequested leaves of absence requires that the effective date of the leave shall be the close of the school year. This presumably means that the effective date must be June 1 or earlier, as section 125.12 requires. In addition, the plan requires that teachers be notified of placement on unrequested leave status by April 1.

Respondents argue that the notification date requires completion of the statutory hearing and a post-hearing decision by April 1. If so, the language requiring that the decision to place a teacher on unrequested leave of absence be made prior to the end of the school year is superfluous and meaningless.

Whether the agreement requires only notification of proposed placement or notifica-

tion of actual placement on unrequested leave of absence by April is the central issue in this case.[1]   Under either reading of the agreement, no conflict with the statute exists.   Under *Jerviss* the teacher has a right to demand a hearing even if the agreement does not provide for one.   Respondents' position would require a school board to anticipate a demand for a hearing and would consequently require notice far in advance of April 1.

◾   Although there is a clear legal distinction between a *proposed* placement on unrequested leave of absence and *actual* placement on unrequested leave of absence, *see Zeller v. Prior Lake Public Schools,* 259 Minn. 487, 108 N.W.2d 602 (1961), the only logical construction of the agreement is that notification of *proposed* placement is required by April 1.   The very fact that the agreement states "without the necessity for any hearing," supports our construction.   To construe the agreement otherwise would deny a teacher the due process protection accorded by the *Jerviss* decision.

◾   We hold that if a teacher is notified of a proposed placement on unrequested leave of absence pursuant to a plan negotiated under Minn.Stat. § 125.12, subd. 6a (1982), and subsequently requests a hearing, then deadlines negotiated under the subdivision 6a plan are waived.   In such cases, school boards are required only to observe the procedural requirements under section 125.12, unless some prejudice is established.   The requirements of the subdivision 6a plan in such a case are mandatory only if the teacher shows that a failure to comply with the procedure under the subdivision 6a plan results in prejudice.   Respondents failed to show they were prejudiced in any fashion in this case.

Reversed.

1.  It is interesting to note that in *Jerviss* the teacher objected to a *notice of the termination* under a subdivision 6a plan and asserted that the appropriate notice was one of *proposed* termination.   273 N.W.2d at 641.   In sharp con-

trast, the instant case involves a situation where the respondents were given notice of a *proposed* termination and a hearing as required by *Jerviss* but assert that notice of actual termination was more appropriate.