In the Matter of the Proposed Placement on Unrequested Leave of Thomas O. NELSON.

No. CX–87–1356.

Court of Appeals of Minnesota.

Dec. 29, 1987.

William F. Garber, Peterson, Engberg & Peterson, Minneapolis, for relator.

Joseph E. Flynn, Michael J. Flynn, Knutson, Flynn, Hetland & Deans, St. Paul, for respondent.

Heard, considered and decided by CRIPPEN, P.J., FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

Relator Thomas O. Nelson seeks appellate review by writ of certiorari of the resolution of the school board of respondent Independent School District No. 833 to place Nelson on unrequested leave of absence for the 1987–88 school year. We affirm.

## FACTS

In the spring of 1987, the school board proposed placement of six teachers on un-

requested leave of absence in response to declining enrollment and changes in curriculum.

During the 1986–87 school year, Nelson was the next to least senior teacher in industrial arts.[1] Nelson's only relevant area of licensure is in industrial arts, so he must remain in industrial arts to retain a teaching position. Nelson was notified on March 13, 1987 that the school board intended to place him on unrequested leave of absence. Nelson requested a hearing, following which the hearing officer recommended he be placed on unrequested leave of absence as of the end of the 1986–87 school year. The school board adopted the hearing officer's recommendation.

Nelson does not dispute the need to place some teachers on unrequested leave of absence due to discontinuance of positions. Rather, he contends the school district should have reassigned a senior industrial arts teacher with additional areas of licensure to some other area occupied by a teacher less senior than Nelson, so Nelson could continue to occupy an industrial arts position for the 1987–88 school year.

## ISSUE

1. Is a *Strand* realignment required when there are no senior teachers who are "qualified" within the meaning of the governing collective bargaining agreement for the proposed area of assignment?

## ANALYSIS

 A school board's decision to terminate a teacher will be set aside only if the decision is arbitrary, capricious, or unreasonable, provided the board acted in good faith and on a correct interpretation of the law. *Laird v. Independent School District No. 317*, 346 N.W.2d 153, 156 (Minn. 1984). Minn.Stat. § 125.12 subd. 6a (1986) provides in part:

**Negotiated unrequested leave of absence.** The school board and the exclu-

sive bargaining representative of the teachers may negotiate a plan providing for unrequested leave of absence without pay or fringe benefits for as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts. Failing to successfully negotiate such a plan, the provisions of subdivision 6b shall apply * * *.

The school district and the teachers negotiated an unrequested leave of absence procedure, which is contained in the collective bargaining agreement (the agreement). Article XIII of the agreement provides in part:

*Section 1. Purpose:* The purpose of this Article is to implement the provisions of M.S. 125.12, Subd. 6, a, and represents the agreed upon plan for the School Board to place tenured teachers on an Unrequested Leave of Absence because of the discontinuance of a position due to lack of pupils, changes in curriculum, or financial limitations.

*Section 2. Definitions:*

\* \* \* \* \* \*

*Subd. 2. Qualified:* Shall mean a teacher who is licensed in the subject matter category, *and has a major in,* the subject matter or grade level * * *.

\* \* \* \* \* \*

*Section 4. Seniority List:* The School Board shall prepare from its records a seniority list which shall contain the name, seniority date, area(s) of licensure, *subject matter or grade level in which the teacher has a major validated by transcript* and license file folder number for each teacher.

\* \* \* \* \* \*

*Section 7. Reasons and Procedure:* Teachers on the seniority list may be placed on Unrequested Leave of Absence

---

1. The least senior teacher in industrial arts was also proposed for placement on unrequested leave of absence, but did not request a hearing and was placed on leave.

by the School Board for reasons as described in Section 1 hereof.

*Subd. 1. Procedure:* Teachers shall be placed on Unrequested Leave of Absence, in any field in which licensure is required by the State Board of Education and who are currently teaching in such fields, in the inverse order of their position on the seniority list.

\* \* \* \* \* \*

*Section 9. Replacement Rights:* A teacher who is placed on Unrequested Leave of Absence *and who is qualified* may elect to replace the least senior teacher on the seniority list who is employed in a position for which both are licensed by the appropriate state agency.

(Emphasis added.)

In *Strand v. Special School District No. 1,* 392 N.W.2d 881 (Minn.1986), the school board placed Arlene Strand, a home economics teacher who was also licensed in child development, on unrequested leave of absence even though Janell Olson, a teacher junior to Strand, was retained to teach child development and as a work experience coordinator. Strand could not directly "bump" Olson because she was not licensed as a work experience coordinator. Strand argued, however, that Jessie Bussie, a teacher senior to both Strand and Olson who was teaching home economics and also licensed in child development and as a work experience coordinator, should be reassigned to Olson's position, thereby creating a home economics vacancy for Strand to fill and placing Olson on unrequested leave of absence. The *Strand* court held the Teacher Tenure Act, Minn. Stat. § 125.17 (1984), mandates practical and reasonable realignment of course assignments to protect seniority rights. *Id.* at 886.

In *Westgard v. Independent School District No. 745,* 400 N.W.2d 341 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. April 17, 1987), we determined *Strand* applies not only to teachers employed by a city of the first class, i.e., under Minn.Stat. § 125.17, but also to those employed by a school district governed by Minn.Stat. § 125.12. *Westgard,* 400 N.W.2d at 345.

Nelson argues *Strand* and *Westgard* require the school board to realign teaching assignments, moving an industrial arts teacher senior to him into another area of the senior teacher's licensure occupied by a teacher junior to Nelson, thereby creating a vacancy in industrial arts for Nelson to occupy and placing the junior teacher on unrequested leave of absence. However, even if realignment were attempted, Nelson would still have been placed on unrequested leave of absence because the senior teachers proposed for realignment are not "qualified" within the meaning of the agreement for the proposed areas of assignment.

The agreement requires a qualified teacher to not only be licensed in a subject matter category, but also to have a major in that same subject matter. "Major" is not expressly defined in the agreement, but the language contained in Article XIII, section 4 of the agreement ("The School Board shall prepare from its records a seniority list which shall contain the \* \* \* subject matter or grade level in which the teacher *has a major validated by transcript"* (emphasis added)) makes clear the word "major" refers to a college major.

While Minn.Stat. § 125.04 (1986) requires only a license for a teacher to be qualified, the Minnesota Supreme Court has recognized the right to include in an agreement negotiated pursuant to Minn. Stat. § 125.12, subd. 6a certain requirements in addition to licensure in order for a teacher to be qualified. *See Blank v. Independent School District No. 16,* 393 N.W. 2d 648 (Minn.1986). This right is consistent with the strong public policy favoring negotiation of terms and conditions of employment. *Jerviss v. Independent School District No. 294,* 273 N.W.2d 638, 644 (Minn.1978). *See* Minn.Stat. § 179A.01 (1986).

In Finding No. 19, the hearing officer stated:

The *Strand* and *Westgard* cases * * * construe the statutory language of M.S. 125.12,6b, and/or language similar or identical to statute as contained in collective bargaining agreements. The language of Article XII and Article XIII of [this agreement] is *unique* and comprehensive as negotiated by the parties and expressly provides for rights of teachers to obtain teaching positions in Article XII, based on seniority. The * * * agreement also provides in Article XIII, Section 2, Subd. 2, a *unique* definition of qualification which requires both licensure as well as a major in the subject matter category, while the language of M.S. 125.12,6b requires only a license.

(Emphasis added.) This finding emphasizes the encouragement of "unique approaches to negotiations and resolutions of disputes" between school districts and teachers. Minn.Stat. § 179A.01.

In *Blank*, the negotiated plan defined a qualified teacher as one

who is licensed to teach full time in the subject matter category and has successfully taught such subject matter category within the Independent School District No. 16 school district.

*Id.* at 650 n. 3. Although *Blank* was decided on other grounds, the supreme court noted:

Even if the failure to grieve were not conclusive of the finality of the seniority list, it seems to us that the hearing officer's findings that although respondent "has taught some elementary students as their vision teacher, she is not qualified within the meaning of the Master Agreement to bump an elementary teacher" is supported by substantial evidence and that, accordingly, the decision of the school board placing respondent on unrequested leave of absence may not be set aside.

*Id.* at 653.

The dissent concedes realignment may be limited by *requirements in addition to licensure* contained in a collective bargaining agreement but attempts to distinguish the additional requirement in *Blank* of having successfully taught a subject matter category from the additional requirement here of having a major in the subject matter category. There is no basis for such a distinction. Both of the additional requirements were the result of negotiations between the parties. We should not attempt to limit the manner in which teachers and school districts approach negotiations. *See* Minn.Stat. § 179A.01. Here, the hearing officer found:

31. * * * none of the teachers in the industrial technology department senior to * * * Nelson possesses a major in the subject matter or grade level in any other licensure area than industrial technology, although some of the teachers have a license in some other area. [The school board] testified that [review of] the transcripts, applications, and all documents in the files of other industrial technology teachers * * * indicate[s] only a minor or less than a major in any other subject area for the more senior industrial technology teachers.

32. [Nelson] offered no testimony to assert that any industrial technology teacher senior to him had a major in any subject matter other than that of industrial technology, as required by Article XIII, Section 2, Subd. 2, to "qualify" within the meaning of a teacher's rights under Article XIII.

\* \* \* \* \* \*

35. Even if realignment of teachers were to be considered * * * there is no evidence that any of the more senior industrial technology teachers could be realigned under the language of Article XIII because the evidence fails to show any other area of qualification because they lack a major in the subject matter as required by the collective bargaining agreement as negotiated by the parties.

Because the hearing officer's findings are supported by substantial evidence, the school board's decision to place Nelson on unrequested leave of absence may not be set aside.

## DECISION

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

The school district asks us to modify matters of law settled in clear declarations of the Minnesota Supreme Court. The question presented is whether the statutory right of realignment and state law which requires only a license to be "qualified" to teach overrides a collective bargaining agreement requiring a license and "major" to be a qualified teacher.

a. *Jerviss v. Independent School Dist. No. 294:* The Legal Effect of Statutory Rights.

"[W]here there is a conflict between the terms of a collective bargaining agreement and the terms of an applicable statute, the statute controls." *Jerviss v. Independent School Dist. No. 294,* 273 N.W.2d 638, 644 (Minn.1978) (citing *International Brotherhood of Teamsters, Local No. 320 v. City of Minneapolis,* 302 Minn. 410, 225 N.W.2d 254 (1975)). The fact that the parties have fully negotiated a plan, as they were authorized to do by the legislature, does not defeat this rule. *Jerviss,* 273 N.W.2d at 644. In *Jerviss,* a teacher was entitled to procedures including notice and a hearing prior to placement on unrequested leave, as guaranteed in section 125.12, subd. 4 and subd. 6b(j), notwithstanding the collective bargaining agreement which did not state such rights. *Jerviss,* 273 N.W.2d at 645.

The *Jerviss* court expressly stated that *"[t]he same reasoning can be applied to other provisions of subdivision 6b." Id.* (emphasis added). The rule was ratified in 1984 in *Atwood:* "[t]he clear import of *Jerviss* is that the presence of a plan negotiated under Minn.Stat. § 125.12, subd. 6a (1982), does not abrogate or eliminate any other statutory rights under section 125.-12." *Atwood v. Independent School District No. 51,* 354 N.W.2d 9, 12 (Minn.1984).

b. Realignment: A Statutory Right.

The supreme court in *Strand* defined a teacher's "position" for the purposes of statutory rights which are stated in subdivision 6b.[1] *Strand v. Special School District No. 1,* 392 N.W.2d 881, 884–85 (Minn. 1986). The court rejected the district's contention that a "position" consists of the particular combination of each teacher's assigned subject matter, hours of service, and location, and consequently elimination of an assignment is grounds for termination of its holder. *Strand,* 392 N.W.2d at 884–85. Rather, the court decided that a teacher's position is determined by consideration of the following factors:

> the teacher's length of service, the duration and scope of the teacher's license, the school district's needs reflecting the welfare of the students and the public, and the ease of reassignment or realignment of course schedules to facilitate a retention of the most senior teachers.

*Strand,* 392 N.W.2d at 885. This test could be no clearer if accomplished by legislative amendment.

Consideration of these factors under the facts in *Strand* "mandate[d] a reasonable realignment of course assignments for the

---

1. Minn.Stat. § 125.17, at issue in *Strand,* permits teachers to "hold their respective *position* during good behavior and efficient and competent service," subd. 3, and states that teachers discharged on grounds of "[d]iscontinuance of *position"* receive "first consideration for other *positions* in the district for which that teacher is qualified," subd. 4(5) (emphasis added).
Section 125.12 also uses the term "position" in subdivisions 6a and 6b. Under 6a, the contract may provide for unrequested leave of absence "for as many teachers as may be necessary because of discontinuance of *position."* Section 6b also permits termination for "discontinuance of *position"* and states that no permanent teacher may be placed on ULA while probationary teachers "are retained in *positions"* for which the permanent teacher is licensed," subd. 6b(a). Subdivision 6b(e) states "[t]eachers placed on unrequested leave of absence shall be reinstated to the *positions* from which they have been given leaves of absence or, if not available, to other available *positions* in the school district in fields in which they are licensed." (Emphasis added throughout).

protection of [Strand's] seniority rights." *Id.* The test for position is thus the source of the rule of realignment: where "practical and reasonable, a school district is required to reassign teaching duties in a manner designed to continue the employment of senior teachers." *Id.* at 886.[2]

Recognizing the potential difficulties the transferred senior teacher might face because of the rule, the supreme court stated

> [t]he holder of multiple licenses enjoys better likelihood of continued employment in the event of reductions in the teaching staff and also receives additional compensation based on the multiple licenses; however, at the same time, the multiple licensed teacher must be subject to assignment in any subject area in which the teacher is qualified by license.

*Id.*

A contract in *Westgard v. Independent School District No. 745,* 400 N.W.2d 341 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987) required that teachers be placed on leave in order of least seniority, and be reinstated to positions for which they are certified in the order of greatest seniority. This court found the contractual provisions to be nearly identical to the reinstatement provisions in section 125.12, subd. 6b, and similar to the provisions in the Teacher Tenure Act as well. *Id.* at 343. Neither expressly provided the right to realignment. *Id.* at 344. Without explicitly deciding whether the contract or the statute governed the teachers' rights, the court reaffirmed that teachers have the right to realignment, which it defined as

> shifting positions and reassignment of a *more* senior teacher to accommodate a *less* senior teacher so that the *least* sen-

ior teacher is eventually laid off or placed on unrequested leave of absence. *Id.* at 345 (emphasis in original).

As for the senior teacher who must be transferred, *Westgard* clearly followed the supreme court by requiring multiple licensed teachers to be "subject to assignment in any subject area in which the teacher is qualified by license." *Id.* at 346 (quoting *Strand,* 392 N.W.2d at 886). Teachers have a right to realignment despite a negotiated contract that does not expressly provide such a right.

### c. Thomas Nelson's "Position": The Facts on Realignment.

Thomas Nelson is senior to teachers in social studies and driver's education, who were retained this school year. Three teachers senior to Nelson in industrial arts are also licensed in social studies, and four teachers senior to Nelson are also licensed in driver's education. Under the statute, any of them could be transferred to the other department in which they hold licensure, bumping a teacher less senior than Nelson, and creating a vacancy in industrial arts for Nelson.

As all of these senior teachers hold licenses in the proposed areas of transfer, they are duly qualified under state law. Minn.Stat. § 125.04 (1986) (a qualified teacher is defined as "one holding a valid license * * * to perform the particular service for which employed in a public school.") The *Strand* realignment rule is based on seniority rights according to statutory licensure.

The agreement provides that to be qualified to teach in a particular area, the teach-

---

**2.** In *Strand,* the school district laid off Arlene Strand, a home economics teacher who was also licensed in child development, even though a teacher junior to her, teaching in a different department, was not laid off. The junior teacher, Janell Olson, was retained in her position teaching child development and as work experience coordinator. At the same time the district assigned Jessie Busse, a teacher who was senior to both Strand and Olson, to teach home economics. Busse was also licensed to teach child

development and as a work experience coordinator.

Clearly, Strand could not directly "bump" Olson because Strand was not qualified to teach as a work experience coordinator. Strand sought instead to have Busse reassigned so that the two most senior teachers, Strand and Busse, could teach in the three areas, and the least senior teacher, Olson, would be laid off. The supreme court held such a realignment was mandated to protect Strand's seniority rights. *Id.*

ers must hold a license as well as a major in that area. Thus, the district argues, the realignment doctrine does not permit transfer of teachers qualified only under the statute. It is true that, as in *Blank*, the teacher(s) sought to be realigned are not "qualified" under the terms of the collective bargaining agreement. *See Blank v. Independent School District No. 16*, 393 N.W.2d 648, 653 (Minn.1986). But the issue is whether this agreement overrides statutory realignment rights. The law is clear that where the statute conflicts with a collective bargaining agreement, the statute controls. *See Jerviss*, 273 N.W.2d at 644. Further, the contract provision on qualifications did not require *experience* but rather certain educational background, which is also the basis for licensure. The distinction between a "major" and a "license" is insufficient to disregard the statutory right.

In addition, the contract is silent on realignment, and there is no indication that the qualifications required were intended to override realignment rights. The silence of the contract should not prevent teachers from exercising their *Strand* statutory right to realignment.

d. Conclusion.

The school district asks us to disregard the law set forth in *Strand*. The district has challenged the law by failing to consider a realignment scheme to protect Nelson's seniority rights, and the district now asks for a court decision to sanction its actions. Existing law does not permit us to do so. I respectfully dissent.