Arlene M. STRAND, Edward P. Lue, and Barbara Johnson, Respondents,

v.

SPECIAL SCHOOL DISTRICT NO. 1, Petitioner, Appellant.

No. C4–84–1466.

Supreme Court of Minnesota.

Sept. 5, 1986.

Paul L. Landry, H. Brent Von Ohlen, Minneapolis, for appellant.

Joseph B. Nierenberg, Minneapolis, for respondents.

COYNE, Justice.

Projected decreases in enrollment and funding prompted Special School District No. 1 for the City of Minneapolis to reduce its teaching staff for the 1984–85 school year by 401 teachers. Respondents Arlene Strand and Barbara Johnson, two of the 72 non-probationary teachers whose services were terminated, appealed to the court of appeals, which reversed, ruling that both terminations were improper. *Strand v. Special School District No. 1,* 361 N.W.2d 69 (Minn.App.1984). We affirm the decision of the court of appeals with respect to Strand as modified herein and reverse with respect to Johnson.

### I.

The threshold question raised by the school district relates to the propriety of the exercise of certiorari jurisdiction by the court of appeals. In seeking review of the school district's action, the affected teachers petitioned alternatively for a writ of certiorari and discretionary review. The court of appeals granted each petition.

The school district's argument centers upon lack of explicit statutory or appellate rule authority for the issuance of the writ of certiorari in these circumstances. It points out that although art. 6, § 2 of the Minnesota Constitution confers upon the court of appeals appellate jurisdiction over all courts except the supreme court "and other appellate jurisdiction as prescribed by law," Minn.Stat. § 480A.06, defining the scope of that court's jurisdiction, contains no reference, either broad or specific, to review of the action of school districts in terminating the employment of teachers. Similarly, Minn.R.Civ.App.P. 115.01, adopted pursuant to Minn.Stat. § 480A.11 (1982), provides no direct authorization for a writ of certiorari to review an action of the school board.

At the time of the issuance of the writ of certiorari in this case, the law was generally unsettled as to whether the court of

appeals had authority to review by certiorari decisions other than those specifically enumerated in Minn.Stat. § 480A.06 or Minn.R.Civ.App.P. 115. However, on October 31, 1983, this court acting on behalf of and prior to the operation of the court of appeals quashed a writ of certiorari issued by the district court and authorized discretionary review by the court of appeals in a matter involving a teacher termination. In the unpublished order issued in *Schmidt v. I.S.D. #1*, 349 N.W.2d 563 (Minn.1984), this court by implication indicated its intention that the court of appeals have certiorari jurisdiction in these matters. Because no writ of certiorari had been sought by the parties from the court of appeals, discretionary review was authorized. As authority for its exercise of jurisdiction in this matter, the court of appeals relied upon its decision in *In Re the Placement on Unrequested Leave of Absence of Pinkney*, 353 N.W.2d 676, 677 (Minn.App.1984). While the issue in *Pinkney* related to the timeliness of a petition for a writ of certiorari rather than the validity of the writ itself, the court of appeals' order directing issuance of the writ surely reflects its view that it possessed such jurisdiction.

Neither our unpublished order in *Schmidt* nor the court of appeals' decision in *Pinkney* is binding on this court. Now, however, we take this opportunity to conclude that it was the intention of the legislature and this court in its rulemaking capacity to vest certiorari jurisdiction for cases of this nature in the court of appeals. The creation of the court of appeals precipitated numerous statutory and appellate rule amendments which generally substituted that court for the district court in those areas in which the latter court acted in an appellate capacity. The fact that this area of review, as well as designated other areas, was omitted must be viewed as an oversight, ultimately corrected by the 1985 amendment to Minn.Stat. § 480A.06, subd. 3. Moreover, it is undisputed that this court has the power to issue writs of certiorari to all corporations and individuals. Minn.Stat. § 480.04 (1984). As a result, even had the court of appeals exceeded its jurisdiction in this matter, our review on the merits in the interests of justice would be appropriate. We conclude, therefore, that the court of appeals' issuance of the writ of certiorari to review school board action was proper.

## II.

■ This appeal presents yet another example of the recurring dispute between teachers and school boards as they grapple with the difficult problem of reducing teaching staffs in response to declining enrollments and proportionate budgetary reductions. Specifically at issue is the propriety of certain teacher terminations under the Teacher Tenure Act, Minn.Stat. § 125.17 (1984).

Arlene Strand, the most senior of ten members of the home economics department whose services were terminated, contends that her discharge while the school district continues to employ a teacher junior to Strand was improper. Strand, who is licensed to teach both home economics and child development, had been assigned as a home economics teacher. Janell Olson, the bypassed or retained junior teacher, holds licenses in home economics, child development, and work experience; she was assigned to teach child development and to act as the district's only work experience coordinator. At the same time, the district assigned Jessie Busse, a teacher who is senior to both Strand and Olson and who is licensed as a work experience coordinator as well as in home economics and child development, as a home economics teacher. Strand, who admittedly cannot "bump" Olson with respect to the work experience portion of Olson's assignment because Strand is not licensed as a work experience coordinator, contends that the home economics, child development, and work experience coordinator assignments should be realigned, if that is deemed desirable, and, regardless whether they are realigned, should be reassigned to the two senior teachers.

The school district defends its retention of the junior teacher Olson at the expense of the senior teacher Strand on several grounds: Characterizing Strand's former assignment as a home economics teacher as a discontinued "position" and Olson's combined assignment as an indivisible "position," it denies that Strand is entitled to "bump" Olson with respect to the assignment in child development, subject matter which Strand is licensed to teach. While it does not dispute Busse's qualifications as a work experience coordinator, it does assert that much of the value of the work experience program, which was built through Olson's personal contact with students and employers, would be lost if a different teacher were assigned as the coordinator. Finally, the school district launches a two-pronged attack on Strand's proposed realignment of the job of the work experience coordinator and the courses in home economics and child development to facilitate reassignment to the two senior teachers: (a) Since the work year of the work experience coordinator is sometimes longer than that of home economics or child development teachers, reassigning Busse to the work experience coordinator's job would entail a promotion which she has not sought and, hence, would be tantamount to permitting Busse to "bump" into a promotion; and (b) absent Busse's request for reassignment, reassignment for Strand's benefit would constitute "displacement," which the school district equates with according Strand the right to "bump" a more senior teacher.

■ Fundamental to the disposition of Strand's claim is the development of a practical definition of the term "position" for purposes of the Teacher Tenure Act. The contexts in which the term appears in the tenure provisions of Minn.Stat. § 125.17, subd. 3 (1984)[1], in the grounds for discharge set out in Minn.Stat. § 125.17, subd. 4 (1984)[2], and in the provisions for preference of Minn.Stat. § 125.17, subd. 11 (1984)[3], are sufficiently different that the term takes on some of the coloration characteristics of a chameleon. Reducing the parties' polarized contentions to their most rudimentary form, we are offered the following definitional choices: Does "position" simply mean a teacher's relative place or rank in the school system's seniority list entitling that teacher to preference as long as seniority is maintained? Or does "position" mean only the teacher's assignment, that is, the particular combination of subject matter, hours of service, and, perhaps,

1. Minn.Stat. § 125.17, subd. 3 (1984), provides tenure during good behavior and efficient and competent service:
   After the completion of such probationary period, without discharge, such teachers as are thereupon re-employed shall continue in service and hold their respective *position* during good behavior and efficient and competent service and shall not be discharged or demoted except for cause after a hearing.
   (Emphasis supplied.)

2. Minn.Stat. § 125.17, subd. 4 (1984), enumerates the grounds for discharge of a teacher:
   Causes for the discharge or demotion of a teacher either during or after the probationary period shall be:
   (1) Immoral character, conduct unbecoming a teacher, or insubordination;
   (2) Failure without justifiable cause to teach without first securing the written release of the school board having the care, management, or control of the school in which the teacher is employed;
   (3) Inefficiency in teaching or in the management of a school;
   (4) Affliction with active tuberculosis or other communicable disease shall be considered as cause for removal or suspension while the teacher is suffering from such disability; or
   (5) Discontinuance of *position* or lack of pupils.
   (Emphasis supplied.)

3. Minn.Stat. § 125.17, subd. 11(a) (1984), directs the order of discharge and creates preference or "bumping" rights when teachers are discharged for reasons set out at section 125.17, subd. 4(5):
   Any teacher whose services are terminated on account of discontinuance of *position* or lack of pupils shall receive first consideration for other *positions* in the district for which that teacher is qualified. In the event it becomes necessary to discontinue one or more *positions,* in making such discontinuance, teachers shall be discontinued in any department in the inverse order in which they were employed.
   (Emphasis supplied.)

location, so that discontinuance of that assignment is grounds for discharge of its holder?

Historically, while we have not confronted the issue in the precise context in which it now arises, we have attempted to define the "position" entitled to protection under the Teacher Tenure Act variously as a teacher's "relative place, rank, or standing in the school system," *State ex rel. Ging v. Board of Education*, 213 Minn. 550, 585, 7 N.W.2d 544, 562 (1942); "that [position] of a teacher at the level and in the curricula for which he is certified ...," *Hendrickson v. Independent School District No. 319*, 303 Minn. 423, 426, 228 N.W.2d 126, 128 (1975); and "that subject area and grade level for which the teacher is qualified as evidenced by licensure from the State of Minnesota," *Berland v. Special School District No. 1*, 314 N.W.2d 809, 812 (Minn. 1981).

The difficulty in articulating a precise definition reflects the fact that although the legislature has clearly adopted a policy strongly favoring the retention of senior teachers, it has also made it clear that public school districts must be accorded sufficient flexibility to effectively administer the schools. *See Laird v. Independent School District No. 317*, 346 N.W.2d 153, 155 (Minn.1984).

Neither of the definitional choices offered by the parties adequately balances the competing interests. Therefore, on the one hand, we must reject the view that a teaching assignment comprising two or more subjects and requiring multiple licensure is an individual "position" entitled to protection only in its entirety, because not only does this definition offer virtually limitless opportunity for manipulation through malice, caprice or political or partisan trends, but the purpose of the Tenure Act to prevent arbitrary demotions or discharges can be equally frustrated for the sake of convenience or without improper motive through sheer inertia. And on the other hand, we must also reject an argument that each class hour in the teaching

schedule constitutes a separate "position" entitled to protection.

While it is impossible to articulate a precise definition or test by which these difficult staff reductions may be decided, it is possible to enumerate the relevant factors that must be considered in each case, namely, the teacher's length of service, the duration and scope of the teacher's license, the school district's needs reflecting the welfare of the students and the public, and the ease of reassignment or realignment of course schedules to facilitate a retention of the most senior teachers. Moreover, school districts faced with declining enrollments and the possible need to lay off teachers should consider these same factors in developing anticipatory plans designed to distribute teaching assignments among the senior tenured teachers. Finally, it is in consideration of these same factors that we conclude that the Teacher Tenure Act mandates a reasonable realignment of course assignments for the protection of seniority rights in this case.

Other courts in cases similar to the one presented have recognized an obligation on the part of a school district to realign the subject matter and teaching assignments so that after the staff reduction has been effected, the remaining teachers are the most senior teachers qualified by license to teach the subject matter. *Welsko v. School Board of the School District of the Township of Foster*, 383 Pa. 390, 119 A.2d 43 (1956); *Proch v. New Castle Area School District*, 60 Pa.Commw. 111, 430 A.2d 1034 (1981). *See also Catron v. Board of Education*, 126 Ill.App.3d 693, 81 Ill.Dec. 750, 467 N.E.2d 621 (1984); *Peters v. Board of Education*, 97 Ill.2d 166, 73 Ill.Dec. 450, 454 N.E.2d 310 (1983).

In the instant matter, where reassignment of the most senior of three teachers preserves the employment of the next most senior teacher, reassignment is not only feasible but is a reasonable requirement. That Busse, the most senior teacher, has not requested reassignment as the work experience coordinator does not justify characterizing the reassignment as either

"displacement" or "bumping." The holder of multiple licenses enjoys better likelihood of continued employment in the event of reductions in the teaching staff and also receives additional compensation based on the multiple licenses; however, at the same time, the multiple licensed teacher must be subject to assignment in any subject area in which the teacher is qualified by license.

Moreover, the fact that the work year of a work experience coordinator may be up to four weeks longer than the work year of a home economics teacher does not transform the reassignment into a promotion. The rate of pay is the same in either case; the work experience coordinator's salary simply continues during any additional work days. Both assignments involve the kind of classroom or counseling duties generally associated with teaching assignments. Neither is a high administrative, nonclassroom post of managerial consequence, and reassignment cannot be said to have an unduly disruptive affect on managerial discretion. *State ex rel. Haak v. Board of Education of Independent School District 625,* 367 N.W.2d 461 (Minn. 1985).

We hold, therefore, that where reassignment or realignment and reassignment is practical and reasonable, a school district is required to reassign teaching duties in a manner designed to continue the employment of senior teachers and that because reassignment was both practical and reasonable in this case, termination of Strand's services for discontinuance of position was violative of her rights under the Teacher Tenure Act.

### III.

■ While Strand proposed reassignment of a senior teacher in order to permit continuance of Strand's employment, Barbara Johnson proposes termination of the services of a senior teacher in order to permit Johnson's continued employment.

Johnson, a part-time teacher and the junior member of the adult basic and continuing education department, was discharged before the beginning of the 1984–85 school year. At the time Johnson's services were terminated, the district continued to employ Sister Marie Diehl, then 72 years of age, despite a district policy that 70 is mandatory retirement age. Citing Minn.Stat. § 181.81, subd. 1(b) (1984), Johnson contends that the school district had a legal obligation to terminate Diehl's employment in conformance with the school district's stated retirement policy, thus indirectly making available to Johnson a part-time teaching assignment.

For several reasons we reject this contention. Minn.Stat. § 181.81, subd. 1(a) makes it unlawful for an employer to refuse to employ or to discharge or demote any person on the ground that the individual has reached an age of less than 70 unless some law specifically authorizes such action. Subdivision 1(b) provides for notice of the option to continue employment beyond the employee's 65th birthday and further provides that employment shall continue for as long as the employee desires or until the employer demonstrates that the employee no longer can meet the bona fide requirements for the job or until the employee reaches the compulsory retirement age established by the employer. While the statute prohibits compulsory retirement prior to age 70, we see nothing in the statute which precludes waiver of compulsory retirement by mutual agreement of the employer and employee. Moreover, even if it were conceded that a mandatory retirement age is a term of Diehl's employment contract, Johnson has no standing to enforce the terms of Diehl's contract.[4] Johnson does not qualify as a third party beneficiary of Diehl's employment contract under either the duty owed test or the intent to benefit test. *See Cretex Co., Inc. v. Construction Leaders, Inc.,* 342 N.W.2d 135 (Minn.1984).

---

**4.** Although Diehl is a tenured teacher and, therefore, presumably subject to the collective bargaining agreement between the school district and the teachers' representative and to the policies of the school district, the record does not disclose whether the policy in question has been incorporated into the agreement by reference or otherwise.

More importantly, Minn.Stat. § 125.17, subd. 4 (1984) sets out the grounds for discharge or demotion of a teacher during and after the probationary period. Retirement on attainment of a specified age is not included in the statutory grounds for discharge. Significantly, the continuing contract statute applicable to all teachers except those employed in the public schools of cities of the first class, expressly provides that a school board may provide by rule that its teachers shall be retired at age 70. Minn.Stat. § 125.12, subd. 5 (1984). Both tenure statutes were reviewed in 1979 and again in 1983, and the continuing contract law was amended in 1979 to raise the retirement age from 65 to 70. We deem it significant that authorization for compulsory retirement of teachers in schools and cities of the first class has never been incorporated into the Teacher Tenure Act. The Act provides only that teachers "shall continue in service and hold their respective position during good behavior and efficient and competent service." Minn.Stat. § 125.17, subd. 3 (1984). Inefficiency, whether attendant on old age or youth, is cause for discharge. Minn.Stat. § 125.17, subd. 4 (1984). In view of this apparently deliberate omission of authority to provide by rule for compulsory retirement, we regard the school district's policy of mandatory retirement at age 70 as unenforceable under the Teacher Tenure Act. Moreover, we are of the opinion that because attainment of a specified age is not a statutory ground for discharge, a provision for compulsory retirement is not negotiable and may not be incorporated into a collective bargaining agreement.

■ Neither does the mandatory retirement age of 70 provided at Minn.Stat. § 354A.21 (1984), provide any basis for compelling Diehl's retirement. Minn.Stat. § 354A.021 (1984) establishes a teachers' retirement fund association in each city of the first class. All teachers in a city of the first class are eligible to become members of the teacher retirement fund association, although only those teachers who contribute to the retirement fund association are entitled to the benefits of the association.

Minn.Stat. § 354A.05 (1984). Minn.Stat. § 354A.21 (1984) provides that notwithstanding the statutory provision limiting entitlement to benefits to members of the association and notwithstanding the Veterans Preference Act, any teacher subject to the provisions of the chapter "shall terminate employment at the end of the academic year in which the teacher reaches the age of 70." The definition of "teacher" contained in section 354A.011, however, sharply limits the class of persons subject to the provisions of chapter 354A: "Teacher" as therein defined includes full time teachers, employees of a teachers' retirement fund association, and part-time teachers who also render other non-teaching services for the school district. Nothing in the record in this case suggests that Diehl, a part-time teacher, renders any non-teaching services for the school district. Hence, she is not a "teacher" as that term is used in chapter 354A. Neither does she come within the definition of a qualified part-time teacher entitled to participate in the applicable retirement fund association. Minn.Stat. § 354A.094 (1984). In short, Diehl is neither eligible to become a member in the teachers' retirement fund association nor subject to the provisions of the statute regulating those eligible for membership in such an association.

We hold, therefore, that the retention of a teacher aged 70 or more did not constitute the breach of any duty which the school district owed to Johnson.

The decision of the court of appeals is affirmed with respect to Strand and reversed with respect to Johnson.