Robert **WESTGARD**, Relator,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 745, Respondent.**

No. C8-86-1216.

Court of Appeals of Minnesota.

Jan. 27, 1987.

Review Denied April 17, 1987.

William F. Garber, Peterson, Engberg & Peterson, Minneapolis, for relator.

James E. Knutson, Stephen M. Knutson, Knutson, Flynn & Hetland, P.A., St. Paul, for respondent.

Heard, considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Relator Robert Westgard was a full-time secondary health and physical education teacher for respondent Independent School District No. 745 in Albany Minnesota. Due to financial considerations, the district placed Westgard and a number of other teachers on unrequested leave of absence for the 1986–87 school year. Westgard appeals the district's decision and contends it should have followed *Strand v. Special School District No. 1*, 392 N.W.2d 881 (Minn.1986), and realigned teaching positions to preserve his seniority rights.[1]

## FACTS

Respondent Independent School District No. 745 proposed in April 1986 to terminate relator Westgard's full-time teaching position effective at the start of the 1986–87 school year. Westgard requested a hearing pursuant to Minn.Stat. § 125.12, subd. 4 (1984), which took place in May 1986 before a hearing examiner. On May 28, the district adopted the hearing examiner's findings and placed Westgard on unrequested leave of absence.

Westgard is a tenured teacher and has been employed by the district since 1970. He is licensed to teach physical education and health as a major, and social studies as a minor. In Minnesota, a teacher can teach full-time in his or her major area of licensure and up to half-time in his minor area.

During the 1985–86 school year, Westgard was employed as a full-time physical education and health teacher. He is the least senior physical education teacher in the district, but one of the few licensed to teach health. Although he was placed on unrequested leave for the 1986–87 school year, he was recalled to a .4 Full Time Equivalency (FTE) health position. Because Westgard may teach an amount equal to the time taught in his major or up to half-time in his minor area, he could still teach .4 FTE social studies and replace a less senior social studies teacher.

Several other teachers' positions are involved in this appeal. Robert Havard is more senior than Westgard and is licensed to teach full-time industrial arts and half-time social studies and physical education; he taught physical education and social studies in 1985–86. Richard Blenkush, the least senior of all the teachers, is a full-time industrial arts teacher. Maurice Meyer is a full-time social studies teacher. Havard, Blenkush and Meyer were all retained for the 1986–87 school year. Michael Collins, on leave for 1985–86, is licensed full-time in physical education; he did not request a hearing. The *seniority and licensure* for the positions are as follows:

| Phys. Ed. | Health | Ind. Arts | Soc. Studies |
|---|---|---|---|
| Collins (FT) | Westgard (FT) | Havard (FT) | Havard (HT) |
| Havard (HT) | | Blenkush (FT) | Westgard (HT) |
| Westgard (FT) | | | Meyer (FT) |

Their assignments for the 1986–87 school year were:

| Collins | Unrequested Leave of Absence |
|---|---|
| Havard | .5 Phys. Ed., .5 Soc. Studies |
| Westgard | .4 Health |
| Blenkush | 1.0 Industrial Arts |
| Meyer | 1.0 Social Studies |

Westgard contends Havard, the most senior teacher, should have been moved to fill Blenkush's full-time industrial arts position. Westgard could then move into Havard's vacated positions; Blenkush, who is less senior than either Havard or Westgard, would then be placed on unrequested leave. Under this arrangement, Westgard's .4 health position would be given to another teacher.

The district's schedule under the most simple *Strand* realignment would be:

| Havard | 1.0 Industrial Arts |
|---|---|
| Westgard | .5 Physical Education |
| | .5 Social Studies |
| Blenkush | Unrequested Leave of Absence |
| Other teacher | .4 Health |

---

1. When this appeal was filed, supreme court review was pending of this court's decision in *Strand v. Special School District No. 1*, 361 N.W.2d 69 (Minn.Ct.App.1984), *pet. for rev. granted,* (Minn. April 11, 1985). The supreme court affirmed *Strand* insofar as it affects this appeal on September 5, 1986.

*Strand,* 392 N.W.2d 881. Westgard argues that *Strand* requires such a realignment. Alternatively, Westgard argues that he is at least entitled to bump Meyer from .4 of his social studies position.

On May 28, 1986 the district adopted the hearing examiner's findings, recommendations and conclusions that: (1) if the supreme court reverses *Strand,* Westgard should be hired to teach .4 health and .4 social studies; and (2) if the court affirms *Strand,* the district should give Westgard a full-time position. Although the supreme court affirmed *Strand* as it pertains to this appeal, Westgard continues to teach .4 health while Meyer and Blenkush, teachers with less seniority than Westgard, teach full time.

## ISSUES

1. Does *Strand* apply to school districts governed by Minn.Stat. § 125.12 (1984) for districts located in cities not of the first class?

2. Did the district err in not permitting Westgard to exercise his contractual rights and bump a less senior teacher or in refusing to realign positions as required by *Strand?*

## ANALYSIS

### I

On appeal, a reviewing court may set aside a school board's termination decision only if it is

> fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or based on an erroneous theory of law.

*Ganyo v. Independent School District No. 832,* 311 N.W.2d 497, 500 (Minn.1981).

Westgard argues that the district's actions erroneously ignore *Strand.* The hearing examiner's findings stated in pertinent part:

> 34. * * * Westgard will be offered no more and possibly less than a ⁴/₁₀ Health position for the 1986–87 school year. If Westgard is offered a ⁴/₁₀ Health position

for the 86–87 school year, he is entitled to bump Maurice Meyer, a Social Studies teacher, who has less seniority than Westgard, in an amount equal to the Health position * * *.

> 35. That pursuant to the decision of the Court of Appeals in the case of *Strand v. Special School District No. 1,* 361 N.W.2d 69 (Minn.App.1984), Westgard claims that Robert Havard, who has a seniority date of April 1, 1970, and teaches ½ Physical Education and ½ Social Studies and is also licensed full-time in Industrial Arts, should bump Richard Blenkush, who is licensed full-time in Industrial Arts and that Havard teach full-time Industrial Arts for the 1986–87 school year. Blenkush has a seniority date of June 18, 1980, and is less senior than Westgard.

> 36. That a petition for review in the *Strand* case, supra, has been filed with and granted by the Supreme Court on April 11, 1985. Oral arguments were heard on December 2, 1985. If the *Strand* case, supra, is affirmed the bumping process outlined in Finding of Fact No. 35 should be applied. If the *Strand* case, supra, is reversed, the bumping process as outlined in Finding of Fact No. 34 should be applied unless otherwise modified in the decision of the Supreme Court.

The hearing examiner further concluded:

> 3. That Westgard is less senior than any other Physical Education and Health teacher that will be retained for the 1986–87 school year and is not qualified to bump any other teacher, except Meyer in an amount equal to the amount of Health that Westgard will be offered for the 1986–87 school year, pursuant to Article IX, Section 8 of the 1983–85 Master Contract between the School Board of Independent School District No. 745 and the Albany Federation of Teachers, which contract is still in effect.

> 4. That Westgard should be placed on unrequested leave of absence due to the uncertainty of the decision of the Supreme Court in the *Strand* case, supra.

If Westgard is not placed on unrequested leave of absence at this time, the School District would be precluded from doing so for the 1986–87 school year should the *Strand* case, supra, be reversed. If the *Strand* case is affirmed, the School District would be obligated to offer Westgard a full-time combination position consisting of any one or more of the following subjects for the 1986–87 school year:

Physical Education

Health

Social Studies

In spite of the district's adoption of the hearing examiner's findings and conclusions and of the decision reached by the supreme court in *Strand,* the district continues to argue that it is not required to realign positions.

In *Strand,* the supreme court held that the Teacher Tenure Act, Minn.Stat. § 125.-17 (1984), mandates practical and reasonable realignment of course assignments to protect seniority rights. *Strand,* 392 N.W.2d at 885. The district argues that it is not required to comply with *Strand* because that case was decided under section 125.17, which applies to cities of the first class, while its actions are governed by its contract with the Federation of Teachers, or Minn.Stat. § 125.12 (1984), which is applicable to districts in cities not of the first class. We disagree.

While the two statutes contain different language, the concept of seniority and tenure for teachers is the same. The relevant portion of section 125.17 provides:

Any teacher whose services are terminated on account of discontinuance of position or lack of pupils shall receive first consideration for other positions in the district for which that teacher is qualified. In the event it becomes necessary to discontinue one or more positions, in making such discontinuance, teachers shall be discontinued in any department in the inverse order in which they were employed.

Minn.Stat. § 125.17, subd. 11(a) (1984).

A similar provision is included in the 1983–35 Master Contract between the district and the Albany Federation of Teachers:

*Section 8. Unrequested Leave of Absence:* The School Board may place on unrequested leave of absence, without pay or fringe benefits, as many teachers as may be necessary because of discontinuance of positions, lack of pupils, financial limitations, or merger of classes caused by consolidation of district. * * In placing teachers on unrequested leave, the Board shall be governed by the following provisions:

\* \* \* \* \* \*

*Subd. 2.* Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are certified in the inverse order in which they were employed by the school district.

\* \* \* \* \* \*

*Subd. 4.* Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence, or, if not available, to other available positions in the school district in fields in which they are certified. Reinstatement shall be in the inverse order of placement on leave of absence.

These contractual provisions are nearly identical to section 125.12, subd. 6b.

In interpreting statutes dealing with layoffs of tenured teachers, the supreme court has noted:

With respect to termination, we believe the legislature intended to protect teachers in cities of the first class to the same extent as those teaching in cities not of the first class.

*Berland v. Special School District No. 1,* 314 N.W.2d 809, 812 (Minn.1981). While the court in *Berland* held that the *recall* provision of section 125.12 does not apply to a teacher employed by a city of the first class, it did not address the seniority issue. *Id.* at 817. Indeed, in *Berland* the supreme court had earlier pointed out that tenure is not really comparable to seniority:

Tenure is the right to continue in permanent employment subject to termination only for cause and in compliance with procedural safeguards. * * * Seniority, on the other hand, gives rise to an additional set of rights, granted by contract or by statute * * *.

*Id.* at 814.

■ Thus, given the distinction between tenure and seniority and the fact that *Strand* deals with seniority, we conclude that *Strand* applies not only to teachers employed by a city of the first class, but also to those employed by a school district governed by section 125.12. We believe that the supreme court's views of the seniority clauses of section 125.17 apply equally to situations such as Westgard's under section 125.12.

## II

In placing Westgard on unrequested leave of absence, the district claimed to have cited findings of the hearing examiner. Those findings indicate that even if this court's decision in *Strand* is reversed and Westgard is offered a .4 health position teaching health for the 1986–87 school year, he is still entitled under the terms of his contract to bump a less senior social studies teacher up to a .4 position. Although the district did offer Westgard a .4 health position, it did not permit him to bump Meyer. Nor has the district made any attempt to realign positions, even though the supreme court affirmed this court's decision as it relates to the present appeal.

The district argues that there is no difference between realignment under *Strand* and bumping under the contract. At oral argument the district's counsel asserted that *Strand* was affirmed only because it contemplates a simple form of bumping. We disagree and believe *Strand* distinguishes between a simple "bump" situation and a more involved realignment.

■ Section 125.12, subd. 6b and the contract involved here provide that seniority and licensure determine the order of bumping, realignment or layoff. A "bump" is a direct exercise of authority by a more senior teacher about to lose his or her teaching position to a less senior teacher under the contract or applicable statute. In such a situation, the more senior teacher moves into the less senior teacher's position. In contrast, "realignment" involves shifting positions and reassignment of a *more* senior teacher to accommodate a *less* senior teacher so that the *least* senior teacher is eventually laid off or placed on unrequested leave of absence.

In this situation, Westgard, who is licensed in health, physical education and social studies, cannot "bump" Havard, a more senior teacher who is licensed in industrial arts, social studies and physical education and teaches half-time physical education and half-time social studies. However, Havard could be reassigned to an industrial arts position which is held by a third teacher licensed only in industrial arts and less senior than either Westgard or Havard. Such a shift in positions would leave an opening for Westgard in social studies. "Realignment" is therefore different from bumping in that at least one more senior teacher is moved to eliminate the least senior teacher. While Westgard admittedly cannot "bump" Havard, Havard can be moved into Blenkush's position and Westgard can then move into the vacancy created.

This distinction between a "bump" and a "realignment" is important because a more senior teacher has an absolute statutory or contractual right to bump a less senior teacher, whereas realignment permits a school district to exercise some discretion. In *Strand,* the court discussed factors to be considered in realigning positions:

> While it is impossible to articulate a precise definition or test by which these difficult staff reductions may be decided, it is possible to enumerate the relevant factors that must be considered in each case, namely, the teacher's length of service, the duration and scope of the teacher's license, the school district's needs reflecting the welfare of the students and the public, and the ease of reassign-

ment or realignment of course schedules to facilitate retention of the most senior teachers.

*Strand,* 392 N.W.2d at 885. The supreme court further points out that a multiple licensed teacher "must be subject to assignment in any subject area in which the teacher is qualified by license." *Id.* at 886.[2]

The district also contends that it is not practical and reasonable to realign positions in this case because Westgard's licensure does not fit into the school's class schedule. However, the record does not show that the district has made any good faith attempt to realign Westgard's schedule. At the termination hearing, the superintendent admitted that based on the current structure there is a conflict with scheduling Westgard to teach health and social studies. Westgard proposed other *Strand* realignments at the hearing which the superintendent stated he had not thought about. The superintendent further admitted that he had only discussed realigning with the district's counsel the day before the hearing.

The record in this case does not show that scheduling is impossible to retain Westgard and place a less senior teacher on unrequested leave of absence, nor does it show that any of the options mentioned or considered are adverse to the educational interests of the students. It appears that the district has fixed its teaching schedule and attempted to fit Westgard into *that schedule* rather than attempting to realign subject matter and teaching assignments to insure that "the remaining teachers are the most senior teachers qualified by license to teach the subject matter." *Strand,* 392 N.W.2d at 885 (citations omitted).

## DECISION

In view of the hearing examiner's findings and the supreme court's decision in

*Strand,* the district proceeded under an erroneous theory of law when it arbitrarily refused to permit Westgard to exercise his contract rights and bump a less senior teacher from a .4 Full Time Equivalency social studies position. We hold that *Strand* requires the district to realign class schedule and reassign teaching duties to continue the employment of the most senior teachers. The district's decision is therefore reversed. We direct the district to reinstate Westgard to a full-time teaching position retroactive to the start of the 1986–87 school year with appropriate back pay.

Reversed and remanded.

---

2. The district argues that Blenkush's performance evaluation rates him higher than Havard as an industrial arts teacher. In *Strand,* the supreme court makes it clear that licensure and seniority are the only factors a district may consider when selecting which teachers may be placed on ULA. *Id.* at 886.