Douglas HERUTH, Norman Selvius,
Gary Uthe and Michael
Zauner, Relators,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 11, Respondent.

No. CX–88–1559.

Court of Appeals of Minnesota.

Jan. 10, 1989.

Review Denied March 29, 1989.

Eric R. Miller, Oppenheimer Wolff &
Donnelly, St. Paul, for relators.

Patricia A. Maloney, Ratwik, Roszak,
Bergstrom, Maloney & Bartel, P.A., Minneapolis, for respondent.

Heard, considered and decided by
RANDALL, P.J., and FOLEY and
SCHUMACHER, JJ.

## OPINION

FOLEY, Judge.

A writ of certiorari was issued July 21,
1988 to review the decision of respondent
Independent School District No. 11 in placing relators Douglas Heruth, Norman Selvius, Gary Uthe and Michael Zauner on
unrequested leaves of absence. At oral
argument it was conceded that Selvius and
Uthe were restored to full time employment. Our decision applies only to Heruth
and Zauner. We reverse and remand.

## FACTS

Independent School District No. 11 (the
District) is comprised of 36 schools and

employs approximately 2,300 licensed teachers. Heruth and Zauner were continuing contract teachers employed by the District during the 1987–88 school year. Heruth has a seniority date of August 20, 1984 and is licensed to teach business education, a secondary school subject area. Zauner has a seniority date of June 21, 1972 and is licensed to teach post-secondary auto mechanics.

At the time Heruth and Zauner were placed on unrequested leave, the terms and conditions of their employment were governed by the 1987–89 collective bargaining agreement between the District and the Anoka–Hennepin Education Association. The District and Heruth and Zauner stipulated that adequate grounds existed to warrant the placement of *some* teachers on unrequested leave of absence.

The 1987–89 collective bargaining agreement contains two relevant provisions. Article XVI, section 3 is an involuntary transfer provision which provides:

> Any involuntary transfer due to discontinuance of position, lack of pupils, financial limitations or merger of classrooms due to consolidations of School Districts, shall be based on total District seniority. If it becomes necessary to transfer teachers due to the above criteria, the reduction within a school building will be done by (elementary) grade or subject, (secondary) subject area with the teacher with the least seniority being transferred first. If an opening occurs within the building where the teacher is teaching, that teacher shall be given an opportunity to interview for that position.

Article XVII, section 1, subd. 2 is an unrequested leave of absence provision:

> Teachers who have acquired continuing Contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by the School District.

The involuntary transfer provision and the unrequested leave of absence provision were part of the same article in several contracts up to the 1981–83 collective bargaining agreement. The 1981–83 agreement removed the unrequested leave of absence language from the transfer article and placed it in a separate article. It has remained in a separate article through the present contract.

The involuntary transfer provision makes no reference to post-secondary education. Zauner's tenured teacher contract rights in post-secondary auto mechanics are thus governed by statute and the case law interpreting those statutes.

The District placed other teachers on unrequested leaves of absence in years prior to the 1986–87 school year. No demands for realignment were made during the course of those proceedings, although possible realignments existed. The subject of realignment also arose during the bargaining for the 1987–89 contract, but no changes were incorporated in that agreement.

The District proposed that Heruth and Zauner be placed on unrequested leaves of absence, and a hearing was held April 26, 1988. The hearing officer determined that the District was experiencing financial limitations and lack of pupils, and that the positions of the affected teachers had been discontinued. The hearing officer concluded that no less senior teachers would be retained on the staff to teach in positions for which Heruth and Zauner were licensed to teach. The hearing officer also concluded that on the basis of the contract and the District's consistent past practice, the District was not required to realign these teachers.

## ISSUE

Was the duty to realign positions to protect the seniority of Heruth and Zauner precluded by the involuntary transfer provision of the collective bargaining agreement?

## ANALYSIS

An appellate court should not set aside a school board's decision to terminate a teacher unless that decision "is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not

within the school board's jurisdiction or is based on an erroneous theory of law." *Ganyo v. Independent School District No. 832,* 311 N.W.2d 497, 500 (Minn.1981).

Heruth and Zauner argue that under the principles of law established in *Strand v. Special School District No. 1,* 392 N.W.2d 881 (Minn.1986), and *Westgard v. Independent School District No. 745,* 400 N.W.2d 341 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 17, 1987), the District has a duty to realign certain teaching assignments to preserve the positions of Heruth and Zauner. They contend that the involuntary transfer provision of the collective bargaining agreement does not preclude the duty to realign.

■ Both Heruth and Zauner are full contract teachers with continuing contract rights. The statute provides:

A teacher who has completed his probationary period in any school district * * * shall have a continuing contract with such district. Thereafter, the teacher's contract shall remain in full force and effect, except as modified by mutual consent of the board and the teacher * * *.

Minn.Stat. § 125.12, subd. 4 (1986). Continuing contract rights "are not synonymous with seniority rights and in fact constitute something more." *Walter v. Independent School District No. 457,* 323 N.W.2d 37, 41 (Minn.1982). This language has been interpreted to include all rights to which a teacher is entitled under a full-time contract, "including the right to be reemployed on a full-time basis." *Id.* Furthermore, a teacher's continuing contract status is *districtwide* based on licensure and date of hire. *See Evans v. Independent School District No. 281,* 396 N.W.2d 616, 621 (Minn.Ct.App.1986).

Here, the District attempts under the involuntary transfer provision to limit the full-time contract rights of Heruth and Zauner to a particular building, when in fact their status is districtwide. In order to give recognition to their continuing contract rights, we must address the question of realignment of senior status teachers under *Strand* and *Westgard.* We reiterate here, Heruth's expertise is in business education, a secondary school subject area, and Zauner's expertise is in post-secondary auto mechanics.

In *Strand,* the school board placed teacher Arlene Strand on unrequested leave of absence. Strand was licensed to teach both home economics and child development. Senior to her was Jessie Busse, who was licensed to teach home economics, child development, and work experience. Less senior to Strand was Janell Olson, who was licensed to teach child development and work experience. Strand argued that Olson should be placed on unrequested leave and Busse reassigned to Olson's position, thereby creating a home economics vacancy for Strand. The supreme court held that

where reassignment or realignment and reassignment is practical and reasonable, a school district is required to reassign teaching duties in a manner designed to continue the employment of senior teachers and that because reassignment was both practical and reasonable in this case, termination of Strand's services for discontinuance of position was violative of her rights under the Teacher Tenure Act.

*Strand,* 392 N.W.2d at 886. The duty to realign was extended to school districts governed by Minn.Stat. § 125.12 in *Westgard.*

In *Westgard,* the school district and teachers' federation had negotiated an unrequested leave of absence plan similar to the provision in Minn.Stat. § 125.12, subd. 6b. This court defined realignment as involving

shifting positions and reassignment of a *more* senior teacher to accommodate a *less* senior teacher so that the *least* senior teacher is eventually laid off or placed on unrequested leave of absence.

*Westgard,* 400 N.W.2d at 345.

■ The unrequested leave of absence provision in this case is virtually identical to Minn.Stat. § 125.12, subd. 6b. The District does not deny that realignment would apply under that provision. Rather, the District argues the involuntary transfer

provision contains unique language and the parties can negotiate language that provides for realignment rights contrary to those in Minn.Stat. § 125.12.

This court has recognized the right of a district to negotiate terms and conditions of employment. *See In the Matter of Nelson,* 416 N.W.2d 848 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. March 18, 1988). In *Nelson,* however, the negotiated terms related to qualifications to teach, and we find those terms to be distinguishable from the negotiated involuntary transfer provision in this case. The District also seeks to rely on *Blank v. Independent School District No. 16,* 393 N.W.2d 648 (Minn.1986). *Blank,* however, is distinguishable on its facts.

The Minnesota Supreme Court discussed negotiated plans under Minn.Stat. § 125.12, subd. 6a in *Jerviss v. Independent School District No. 294,* 273 N.W.2d 638 (Minn. 1978). The supreme court stated:

> It is not clear, however, that by enacting subdivision 6a the legislature intended to abrogate the rights provided to teachers under continuing contracts by subdivision 4. In fact, by specifically including terminations under subdivision 6a in subdivision 4, the legislature seemed to indicate that, even under a negotiated plan for unrequested leave of absence, the teacher has the right to notice of the proposed termination (or unrequested leave of absence) and the right to request a hearing on the grounds for that termination. If subdivision 4 does provide this right, the fact that the right to notice and a hearing is not explicitly included in the negotiated plan should not take away that right.

*Id.* at 646. In *Atwood v. Independent School District No. 51,* 354 N.W.2d 9 (Minn.1984), the supreme court held that

> the presence of a plan negotiated under Minn.Stat. § 125.12, subd. 6a (1982), does not abrogate or eliminate any other statutory rights under section 125.12.

*Id.* at 12. *Jerviss* and *Atwood* arose in the context of procedural matters and did not address the extent to which Minn.Stat. § 125.12, 6b will control over the substantive provisions of the plan. We address that question here and conclude that this negotiated involuntary transfer provision does not preclude the application of realignment under *Strand* and *Westgard.* Where there is a conflict between the plan and the statute, the statute controls. However the plan applies, it applies only to Heruth and not to Zauner, who is licensed to teach post-secondary auto mechanics.

*Strand* requires a district to realign teaching duties, where it is reasonable and practical, so that "the remaining teachers are the most senior teachers qualified by license to teach the subject matter." *Strand,* 392 N.W.2d at 885. The testimony presented at the April 1988 hearing shows that realignment is reasonable for both Heruth and Zauner.

Carol Swenson, the personnel director for the District, testified that within the district there is a multiple-licensed teacher in the business education area who is senior to Heruth. Elaine Ree has a seniority date of September 1, 1967 and is licensed in both business education and social studies. Swenson also testified that there are several probationary teachers in the social studies area. The nonrenewal of a probationary social studies teacher and the reassignment of Ree is reasonable to preserve Heruth's status.

With regard to Zauner's status, testimony showed that David Johnson is a multiple-licensed teacher senior to Zauner. Johnson teaches *post-secondary* vocational auto mechanics, and is also licensed for *secondary* industrial arts and vocational work. Johnson has been employed with the District since January 1968. There was also testimony from Swenson that Michael Lindstrom, who has a seniority date of August 20, 1975, is licensed to teach secondary industrial arts and math. Additionally, there are several probationary math teachers in the district. It is reasonable that nonrenewal of a probationary math teacher, together with reassignment of Lindstrom to math and Johnson to secondary industrial arts would preserve Zauner's status in post-secondary auto mechanics.

The District expresses concern that the reassignment of multiple-licensed teachers Johnson and Ree could subject the District to lawsuits by those teachers. We acknowledge that concern but believe *Strand* controls.

> The holder of multiple licenses enjoys better likelihood of continued employment in the event of reductions in the teaching staff * * *; however, at the same time, *the multiple licensed teacher must be subject to assignment in any subject area in which the teacher is qualified by license.*

*Strand,* 392 N.W.2d at 886 (emphasis added).

We conclude that neither the involuntary transfer provision of the collective bargaining agreement, the statute nor case law precludes realignment of multiple-licensed teachers; thus, the remaining teachers are the most senior teachers qualified to teach in those subjects. To limit the contract rights of a senior teacher to a single building under the plan would violate the teacher's continuing districtwide contract rights under the statute. We conclude the District here has proceeded under an erroneous theory of law in placing Heruth and Zauner on unrequested leaves of absence.

### DECISION

We reverse the decision of the District and order reinstatement of Heruth and Zauner. We remand for a hearing to determine the amount of full back pay plus interest due Heruth and Zauner from the date each was placed on unrequested leave of absence and to further proceed to realign in accord with this decision.

REVERSED AND REMANDED.