In the Matter of the Proposed Placement on Unrequested Leave of Marie BRISTOL, Victoria Svetlik, Jane Maurer and Douglas Ekmark.

No. C0–89–1175.

Court of Appeals of Minnesota.

Feb. 27, 1990.

Eric R. Miller, Oppenheimer, Wolff & Donnelly, for relator Bristol.

Harley M. Ogata, Minnesota Educ. Ass'n, for relator Svetlik.

Joseph E. Flynn, Knutson, Flynn, Hetland & Deans, St. Paul, for respondent Independent School Dist.

Considered and decided by FORSBERG, P.J., and FOLEY and SHORT, JJ.

## OPINION

FOLEY, Judge.

Relator Victoria Svetlik was a full-time social studies teacher for respondent Independent School District No. 833 (the district). In response to declining enrollment, changes in curriculum and financial limitations, the district placed Svetlik and several other teachers on unrequested leave of absence after the 1988–89 school year. Since the time the writ of certiorari was issued in this matter, three of the relators, Marie Bristol, Jane Maurer and Douglas Ekmark,

have been recalled to full-time positions. Our decision applies only to Svetlik. We reverse and remand.

## FACTS

The district proposed in May of 1989 to place Svetlik on unrequested leave of absence effective at the close of the 1988–89 school year. Svetlik requested a hearing pursuant to Minn.Stat. § 125.12, subd. 4 (1988). The hearing took place on May 10, 1989, before a hearing examiner. Subsequently, on May 25, 1989, the district adopted the hearing examiner's written findings, and Svetlik was placed on unrequested leave of absence. The district and Svetlik stipulated that adequate grounds existed to warrant the placement of teachers on unrequested leave of absence. Further, the parties agreed there were no probationary or continuing contract teachers junior to Svetlik who would continue to hold a position for which Svetlik is licensed. The dispute between the parties centers on whether the district is required to make a reasonable realignment of teaching positions as required under the holdings of *Strand v. Special School District No. 1*, 392 N.W.2d 881 (Minn.1986) and *Westgard v. Independent School District No. 745*, 400 N.W.2d 341 (Minn.Ct.App.1987), *pet. for rev. denied* (Apr. 17, 1987).

The negotiated collective bargaining agreement contains two relevant provisions pertaining to unrequested leave of absence and teacher transfers. Article XII, Section 5 states:

An involuntary transfer is a transfer necessitated by a reduction of staff, a closing of a building, and the elimination of program(s) whereby a teacher must be transferred to another position or building.
Subd. 1. * * * If no volunteers are available, the least senior teacher in the building who is licensed for the position being eliminated shall be the teacher transferred or reassigned.

Article XIII, Section 7, subd. 1 provides:
Teachers shall be placed on Unrequested Leave of Absence, in any field in which licensure is required by the State Board of Education and who are currently teaching in such fields, in the inverse order of their position on the seniority list.

The hearing examiner found the unrequested leave of absence provisions of the collective bargaining agreement were basically different from that found in Minn. Stat. § 125.12, subd. 6b (1988), the language subject to interpretations in *Strand* and *Westgard*. The hearing examiner found further that neither the collective bargaining agreement, past practice, nor bargaining history between the parties suggested a construction that included realignment in the interpretation of the collective bargaining agreement. The hearing examiner concluded realignment was inconsistent with the negotiated plan for unrequested leave of absence and that *Strand* and its progeny were inapplicable because they contained language fundamentally different from that in the negotiated unrequested leave of absence provisions. The hearing examiner also concluded that on the basis of the contract and the district's consistent past practice, the district was not required to realign Svetlik.

## ISSUE

Did the unrequested leave of absence plan and the involuntary transfer provisions negotiated between the district and the teachers eliminate the district's duty to realign teaching positions?

## ANALYSIS

■ A school board's decision to place a teacher on unrequested leave of absence will not be disturbed on appeal unless that decision "is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction or is based on an erroneous theory of law." *Ganyo v. Independent School District No. 832*, 311 N.W.2d 497, 500 (Minn.1981).

Svetlik argues the district has a duty to effectuate a reasonable realignment of teaching positions to preserve her teaching position. Svetlik claims that the principles

enunciated in *Strand* and *Westgard* mandate the district's duty to realign in this case. The district opposes realignment of teaching positions, arguing that while such realignment is reasonable and practical, the provisions of the collective bargaining agreement effectively preclude any duty to do so.

Minnesota courts have established that school districts have a duty to realign in unrequested leave of absence plans. *See Strand,* 392 N.W.2d at 886 (mandating reasonable realignment of courses offered to protect seniority rights of teachers employed by cities of first class governed by Minn.Stat. § 125.17); *Westgard,* 400 N.W.2d at 345 (extending *Strand* to those employed by school districts governed by Minn.Stat. § 125.12); *see also Harms v. Independent School District No. 300,* 450 N.W.2d 571 (Minn.1990) (requiring reasonable realignment when reinstating teachers from unrequested leaves of absence). The duty to realign, however, is not inexorably cast, and it may be circumscribed or eliminated completely. *See Destache v. Independent School District No. 832,* 434 N.W.2d 270, 272 (Minn.Ct.App. 1989); *In re Nelson,* 416 N.W.2d 848, 850 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1988). However, the existence of a negotiated unrequested leave of absence plan does not diminish or abrogate a teacher's other statutory rights under Minn.Stat. § 125.12. *See Atwood v. Independent School District No. 51,* 354 N.W.2d 9, 12 (Minn.1984). "Where there is a conflict between the plan and the statute, the statute controls." *Heruth v. Independent School District No. 11,* 434 N.W.2d 470, 473 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. Mar. 29, 1989).

In *Heruth,* this court held that the negotiated involuntary transfer provisions of the collective bargaining agreement did not preclude the realignment under the *Strand* and *Westgard* decisions. *Heruth,* 434 N.W.2d at 473. We emphasized in *Heruth* that a teacher's "continuing contract rights" encompass more than mere "seniority rights." It includes all the rights to which a teacher is entitled under a full-time contract, " 'including the right to be reemployed on a full-time basis.' " *Id.* at 472 (quoting *Walter v. Independent School District No. 457,* 323 N.W.2d 37, 41 (Minn. 1982)). This court's protection of the continuing contract rights of teachers "is consistent with the fundamental purpose of the teacher tenure law, protection against summary administrative termination." *Rochester Education Association v. Independent School District No. 535,* 271 N.W.2d 311, 315 (Minn.1978).

Although conceding that realignment is practicable, the district raises a trident argument. It claims the involuntary transfer provisions of the negotiated plan preclude realignment, that the unrequested leave provisions provide the sole method by which a teacher may displace a less junior teacher, and finally, that the past practices, bargaining history and understandings between the parties do not support a duty to realign. The first two arguments raised by the district were rejected by this court by our decision in *Heruth. See Heruth,* 434 N.W.2d at 473. In *Heruth,* as here, the school district attempted to diminish the teacher's full-time contract rights by limiting those rights to a single building under the negotiated plan, when in fact the teacher's status is districtwide. *Id.* at 472. The district here claims that *Heruth* is distinguishable in that the unrequested leave of absence plan in *Heruth* was virtually identical to Minn.Stat. § 125.12, subd. 6b. We disagree.

In *Heruth,* as in the present case, the negotiated unrequested leave of absence plan was silent on the issue of realignment. The district argues here, however, that the unrequested leave of absence provisions are significantly different from the statute and those plans construed in *Westgard* and its progeny. Again, we disagree.

As the district properly notes, there are several differences between the negotiated plan and the provisions of Minn.Stat. § 125.12, subd. 6b. Specifically, the district notes the collective bargaining agreement contains an additional term related to qualifications to teach. *See Nelson,* 416 N.W.2d at 850. In addition, under Article

XIII, Section 9 of the unrequested leave provisions, a teacher is required to give notice to exercise "bumping rights." Such notice is not required under the statute. These differences between the unrequested leave provisions and the statute do not strike at the heart of negating the district's duty to realign teaching positions. Nothing in the express language of either Article XII or Article XIII diminishes the duty to realign. Simply put, the district's duty to realign is mandated by statute, and the conflict between the plan and the statute is controlled by the statute. *Heruth*, 434 N.W.2d at 473.

Finally, the district argues the past practice, bargaining history, and understandings between the parties evince the intent to eliminate the district's duty to realign teaching positions. In support of this proposition, the district cites *Destache*. The *Destache* case is distinguishable on its facts. In *Destache,* the negotiator representing the teachers testified that he understood the unrequested leave plan eliminated the duty to realign. *Id.* at 273. Here, both sides presented conflicting testimony as to the meaning and interpretation of the unrequested leave provision. The district offered the testimony of Perry Palin, personnel manager for the district, who testified that the district has never recognized realignment rights and that teachers have acquiesced to this interpretation by failing to appeal prior realignment denials. Palin testified further that the district offered a proposal at the last bargaining session to "clarify" the issue and explicitly exclude realignment from the agreement. Bruce Gilbertson, the chief negotiator for the teachers' association, testified that during negotiations the district did in fact present a proposal to eliminate a realignment duty; however, the proposal was rejected. Gilbertson testified further that the teachers' association consistently maintained that a duty to realign exists under the present contract. This evidence indicates neither acquiescence nor past practice eliminating the district's realignment duty.

While *Destache* stands for the proposition that a bargaining history with the un-

ion is some consideration, it may not contradict undisputed facts mandating realignment. *Destache* does not control the decision here. Furthermore, the court in *Destache* held that even if realignment were required under the agreement, it would not have been reasonable. *Id.* at 274. *Here, the district concedes realignment is practical and reasonable. The district's duty to realign is manifest. We will not permit the district to reap by other means that which it has not sown legitimately at the bargaining table.*

## DECISION

In view of the hearing examiner's findings, the district proceeded under an erroneous theory of law when it refused to realign teaching positions to preserve Svetlik's continuing contract rights. We reverse the decision of the district and order reinstatement of Svetlik. We remand for realignment in accord with this decision and a hearing to determine the amount of full back pay plus interest due Svetlik from the date she was placed on unrequested leave of absence.

Reversed and remanded.