**In re the Petition of Gregory Jay DALLMAN for Recall and Realignment to Obtain a Full Time Position.**

No. CO–90–2445.

Court of Appeals of Minnesota.

May 14, 1991.

Christina L. Clark, Harley M. Ogata, Roger Barrett, Minnesota Educ. Assoc., St. Paul, for relator.

David Watson, Watson Law Offices, Tyler, for ISD 641.

Considered and decided by AMUNDSEN, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Relator contends the failure of Independent School District No. 641 to realign staff in order to recall him to a full time position from unrequested leave of absence warrants reversal. Relator argues there was a reasonable realignment of staff which would provide him a full time position, and that the school board's failure to so realign is unsupported by substantial evidence in the record. We agree and reverse.

## FACTS

Walnut Grove School District (ISD # 641), respondent, and Westbrook School District entered into an interdistrict cooperation agreement (IDCA) effective for the 1990/91 school year. The agreement created a middle school for grades 5 through 8 in Walnut Grove, and a high school for grades 9 through 12 in Westbrook. A substantial realignment and reassignment of teachers took place.

Relator, Gregory J. Dallman, began his employment with ISD # 641 in 1981. He has a continuing contract with the school district. Relator is licensed to teach full time in the areas of coaching (grades 7–12), driver's education (grades 7–12), and physical education (grades K–12). Relator has taught physical education throughout his employment with the district.

On March 19, 1990, the school board of Walnut Grove passed a resolution proposing to place relator on unrequested leave of absence, pursuant to Minn.Stat. § 125.12, subd. 6b (1990), on the grounds of discontinuance of position, decline in enrollment, lack of pupils, financial limitations, and interdistrict cooperative agreement. The school board notified relator of its proposed action on March 23, 1990, and it informed him of his right to request a hearing pursuant to Minn.Stat. § 125.12, subd. 4. Relator made no request for an independent hearing. The school board met on May 14, 1990, and it passed a resolution placing relator on unrequested leave of absence.

Relator was notified of the school board's resolution on May 23, 1990, and in a different correspondence that same day, the school board offered relator a part time physical education position. On June 27, 1990, relator provided a handwritten letter to the superintendent of schools accepting the part time position. He signed a contract for the .25 position on July 18, 1990, and the school board increased the position to .33 before the 1990/91 school year began.

However, subsequent to the proposed placement of relator on unrequested leave and prior to his acceptance of the part time position, a science teacher vacancy became available. At the conclusion of the 1989/90 school year, a Walnut Grove staff member licensed and teaching in the areas of chemistry and life sciences resigned. The proposed schedule, in June 1990, indicated vacancies in biology and chemistry for the 1990/1991 school year. The science vacancies were due to the science teacher's retirement and the IDCA.

John Amundson had taught one section each of biology and chemistry during the 1989/90 school year, but he was reassigned to teach two sections of elementary physical education and two sections of senior high physical education/health for the 1990/91 year. Amundson began teaching in the district in 1966, and he is licensed to teach full time in the areas of coaching (grades 7–12), physical education and health (grades K–12), and half time (up to two class sections a day) in the areas of chemistry (grades 7–12) and biology (grades 7–12). None of the science vacancies were assigned to Amundson for the 1990/91 school year.

On June 29, 1990, relator, through counsel, wrote to the superintendent of schools proposing a realignment so relator could be recalled to a full time position. The realignment proposed by relator in the June 29 letter referred to the district's proposed schedule and suggested the assignment of Amundson's two elementary physical education sections to relator. Amundson would then be assigned one section each of biology and chemistry. With the addition

of study hall supervision and preparatory time, the proposed realignment would leave both men with full time positions for the 1990/91 school year. Relator also requested a hearing before the school board on the proposed recall.

Subsequent to the June 29 letter and prior to the hearing on the recall proposal, the district advertised and filled all the science vacancies with three probationary teachers. James Ballard was hired full time, Trevor Johnson was hired full time, and Stanley Goldade was hired part time. Ballard was licensed for middle school science, Johnson was licensed for life sciences and chemistry, and Goldade was licensed for math, middle school science and math, and physics. Ballard and Goldade taught science in the middle school to grades 7–8, and Johnson taught science courses in the high school. Teaching assignments for the 1990/91 school year, which included the probationary teachers, were not finally made until September 3, 1990.

The school board held a hearing on relator's proposed realignment on September 18, 1990. The testimony at the hearing established that relator and Amundson are continuing contract teachers with seniority over the probationary teachers Ballard, Johnson, and Goldade. The science courses which could have been assigned to Amundson were part of full time assignments given to the probationary teachers.

The superintendent of schools, Orlyn Wiemers, testified the school board had not considered the proposed realignment before the hearing, but the district's administrative staff was aware of relator's proposal when it developed the 1990/1991 schedule and assignments. In his opinion, realignment was not reasonable because relator was licensed only for physical education; there were two teachers with more seniority (Amundson being one) who were licensed for physical education as well as health (the health was being taught concurrent with P.E. in the middle school and high school, but only P.E. was being taught at the elementary level); and Amundson's half time biology and chemistry license would leave an additional part time science

position to fill if he were assigned science courses. Mr. Wiemers testified it was his opinion a part time science position would have probably remained vacant because of difficulty in filling that type of position. However, Wiemers conceded that no attempt to advertise for a part time science teacher was made. Mr. Wiemers testified geographic or transportation problems were not factors heavily considered in the decision not to realign.

A representative of the administrative staff committee that developed the 1990/91 schedule and assignments, William Richards, testified they were aware of relator's proposed realignment. The committee found the proposed realignment unreasonable because: a) relator lacked licensure in both physical education and health, and was therefore precluded from teaching the combined physical education/health classes in either the middle school or high school; b) realignment would result in the creation of a part time science position that would be difficult to fill; and c) any realignment of science courses to Amundson would be difficult to implement because of the difficulty in preserving necessary preparation time for the full time science instructors.

The hearing requested by relator was held on September 18, 1990. Both relator and the school board were represented by counsel. Following the presentation of witnesses and argument, the school board issued findings of fact on October 15, 1990, which denied relator's proposed realignment. The school board found that the district's staff considered the possibility of realignment, that relator's license was limited only to physical education, that relator had proposed no realistic or reasonable realignment, and that no reasonable realignment was possible. The relator petitioned for writ of certiorari on November 15, 1990.

## ISSUE

Was the school board's refusal to implement the proposed realignment, which would allow for the full time recall of relator, supported by substantial evidence in the record as a whole?

## ANALYSIS

 The school board made 10 findings. Only five of the findings are relevant to the issue of reasonable realignment. The relevant findings provide:

4. That the district entered into an Interdistrict Cooperation agreement with Westbrook and the related creation of a middle school *changed both the curriculum and scheduling* of the Districts.

5. That the administrative staff of the Districts duly considered the potentiality of realignment of teaching positions available within the restructured Districts as regards the Petitioner [relator].

6. *That the Petitioner's [relator] teaching license was limited to physical education.*

9. That the Petitioner [relator] has proposed *no realistic or reasonable realignment to accommodate his desires in light of seniority, curriculum requirements, and licensure.*

10. That no reasonable realignment is possible in this case for all of the factors cited above, and it is, therefore, ordered that the Petitioner's request is denied.

(Emphasis added).

The analysis to be applied to the school board's decision not to realign is derived from the Minnesota Supreme Court's decision in *Harms v. Indep. School Dist. No. 300*, 450 N.W.2d 571 (Minn.1990). As in the present case, *Harms* considered a school board's refusal to realign its staff so as to allow for the full time recall of a teacher previously placed on unrequested leave of absence. In *Harms*, the Minnesota Supreme Court said:

The central issue [was] whether under Minn.Stat. § 125.12, subd. 6b(e), the applicable teacher reinstatement statute, school districts are required to take reasonable steps to realign personnel and positions in order to recall from ULA the most senior teachers.

*Harms*, 450 N.W.2d at 574. The court held that school districts must realign personnel and positions when reasonably possible in order to reinstate the most senior teachers from ULA. *Id.* at 575–76.

The court went on to delineate what factors are to be considered when determining "reasonable realignment" in recall cases. The *Harms* opinion laid out the following factors to be considered:

—The teacher's length of service

—The duration and scope of the teacher's license

—The school districts' needs reflecting the welfare of the students and public

—The ease of reassignment and realignment of course schedules to facilitate a retention of the most senior teachers

—Each case is to be decided on its own merits, and any realignment plan should be practical and reasonable

—Realignment requires reasonable and good faith attempts to accommodate the most senior teachers

—When the opening occurs

*Id.* at 576 (citations omitted). The above listed factors, except the last, are the same as those used to determine reasonable realignment in cases involving initial placement on ULA, prior to the start of a new school year, as set out in *Strand v. Special School Dist. No. 1*, 392 N.W.2d 881, 885–86 (Minn.1986). *Harms* added the last factor because it recognized that realignment on recall could unduly disrupt classrooms and make recall generated realignment potentially more burdensome because vacancies could happen several times *during* a school year depending on the size of the school district. *Harms*, 450 N.W.2d at 576.

In the present case, the significant facts are undisputed, and "the parties only disagree on the inference or conclusion of law to be drawn from the facts as to whether respondent's requested [realignment was] reasonable." *Id.* at 578. Therefore, this reviewing court "may make the reasonableness determination and bring this [contest] to a conclusion." *Id.* (citation omitted).

Relator's proposed realignment called for his being assigned Amundson's two elementary physical education classes, and Amundson picking up one biology and one chemistry class. The science classes assigned to Amundson would be from grades 7–12. The science classes assigned to

Amundson would be taken from the course loads of one of the new probationary teachers. No other teachers would be affected, and Orlyn Wiemers, superintendent, testified that geographical and transportation problems were not heavily considered as impediments to realignment.

*Harms* added the factor of considering when an opening occurs in reviewing reasonableness of realignment. This factor anticipated a mid-school year request for realignment upon recall. The school board argues that relator's June 29 request for realignment was somehow untimely, and this delay makes reassignment and realignment unfeasible. The school board's brief states:

"[r]elator did not request realignment until after the thirty (30) days [to accept a part time position] specified in Superintendent's letter of May 24, 1990, had passed. * * * Due to a resignation, the District had advertised, interviewed and offered a contract to a replacement full time chemistry and life science teacher by the time of the hearing on the matter. Thus, Relator's proposal by the time it was formalized, would have * * * necessitated in Respondent violating a contract that it had entered into."

These arguments are misleading. At the time relator made his request for realignment, the superintendent was aware that relator's counsel had requested copies of the seniority list and proposed 1990/91 schedule, that the science vacancies had not been filled, the schedules would not be formalized for another two months, and, as respondent agreed at oral argument, probationary teachers do not have the same contract rights as continuing contract teachers.

Contrary to the board's assertion, the vacancy occurred during the summer prior to the start of the 1990/91 school year, and a realignment could have been effected at that time with no disruption to classes. The factor of when the opening occurred, as set out in *Harms,* favors relator's proposed realignment.

Had Amundson been assigned two classes of science, the school board argues the resulting part time science position would have probably gone unfilled. This argument is unsupported by the record. The only evidence is the opinion of Orlyn Wiemers and William Richards. However, no attempt to advertise the science course as a part time position was undertaken, and the district was on notice of the realignment proposal and request early enough to pursuade such advertising measures. Goldade did in fact accept a part time position which included science courses. *Harms* reaffirms that school districts need make good faith efforts to realign, *see Harms,* 450 N.W.2d at 576. In this case, a failure to even attempt to obtain a part time science teacher with two months remaining before classes were scheduled to begin is not a good faith attempt to accommodate relator's realignment proposal.

The other *Strand* and *Harms* factors also favor realignment. Relator's nine years of service as opposed to the new teacher's probationary status tip seniority concerns in favor of realignment. The proposed realignment would allow relator to use his physical education license (grades K–12) since the classes he would pick up from Amundson were elementary classes.

We note respondent's position that relator was not licensed to teach health, and therefore was not qualified to assume the combined physical education/health classes taught at the middle school and high school. Relator challenged respondent's position on the basis that his seniority rights should take precedence over the school board's action to combine related subjects into one course. Relator's contention was that the school board should be required to sever physical education and health into separate secondary courses if necessary to effect a realignment which would allow for recall of relator to a full time physical education position.

Relator conceded a school board has the discretionary power to shape offered curriculum so that related subjects such as physical education and health, although not mandated by state law, could be taught in the same class. However, relator's contention, at oral argument, was that his seniori-

ty rights supercede school board discretion if the two were in conflict.

Relator's position would be unpersuasive if we had to rule on this issue. However, here there were elementary physical education classes, without a health component, which were subject to reasonable realignment, and we need not decide this issue.

The school board's argument that relator's inability to teach health at the middle or high school made realignment unreasonable is unfounded. The proposed realignment would only affect elementary physical education classes where no health component was included in the curriculum. The welfare of the students would not have been adversely affected by realignment. Relator was experienced in the teaching of physical education, and Amundson had been teaching science up to the 1990/91 school year.

Finally, the proposed realignment would not have had an adverse affect on the ease of reassignment. The only teacher whose preparation time would have been affected by assigning two science courses to Amundson would have been the probationary teacher from whose class load the courses were taken. The reassignment of two science classes would have made one of the probationary teacher's positions a part time position, and some part time positions do not receive a preparatory hour.

The factors of *Strand* and *Harms*, when applied to a review of the record as a whole, show there is inadequate evidence to support the school board's finding that relator's limited license for physical education prevented a reasonable realignment to provide him a full time position upon recall. The additional courses relator requested to be assigned to him upon realignment were elementary physical education, which he was licensed to teach. Relator made a timely request for realignment based on vacancies in district staff, and his request was in advance of both the start of the new year and the filling of the vacancies with probationary teachers.

The realignment proposed by relator was simple, straight forward, and would not negatively impact the quality of the curriculum the students would receive. The school district did not attempt to advertise for the part time science position that would facilitate realignment. The opening occurred at a time when realignment could have been facilitated because the schedule for the 1990/91 year had not then been finalized.

■ Requiring the district to realign now in the midst of the last semester of the current school year would be unduly burdensome on students. The students are deeply into the curriculum, are preparing for finals, and to force new instructors on them for the limited remainder of this school year would have a detrimental effect on the classroom environment. *See, e.g., Harms*, 450 N.W.2d at 576. At this point in the school year, money damages rather than a late realignment are appropriate.

### DECISION

The school board's refusal to realign so as to recall relator to a full time position is reversed and the district is directed to provide relator with the appropriate back pay as if he had been in a full time position for the entire 1990/91 school year. The school board is ordered to make reasonable realignments in its personnel and assignments for the forthcoming 1991/92 school year so as to return relator to a full time position. We recognize any reasonable realignment for the coming year must balance relator's seniority rights and the school board's right to follow its mandate to educate students.

Reversed.